No. 90-384

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

THOMAS C. UMBS,

      Plaintiff and Appellant,

   v.

SHERRODD, INC., a Montana
corporation, and MONTANA
TRANSPORT COMPANY,

      Defendants and Respondents.


APPEAL FROM:   District Court of the Thirteenth Judicial District,
              In and for the County of Yellowstone,
              The Honorable Maurice R. Colberg, Jr., Judge
              presiding.


COUNSEL OF RECORD:

      For Appellant:

          Thomas M. Malee, Esq., Billings, Montana

      For Respondent:

          John Dyre, Esq., Crowley Law Firm, Billings, Montana
          Gary L. Graham, Esq., Garlington, Lohn & Robinson,
          Missoula, Montana
          Loren H. Torkelson, Esq., Richter & Torkelson,
          Billings, Montana

FILED

JAN 22 1991

Filed:

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  January 3, 1991

Decided:  January 22, 1991

_____
Clerk

Honorable Henry Loble, Retired District Judge, delivered the Opinion of the Court.

Thomas C. Umbs appeals from the order of the District Court of the Thirteenth Judicial District, Yellowstone County, granting defendant Montana Transport Company summary judgment in this matter. We reverse and remand.

The dispositive issue is whether Umbs raised material issues of fact which precluded summary judgment.

Montana Transport Company (Montana Transport) is a motor carrier authorized by the Interstate Commerce Commission to carry freight in interstate commerce. Pursuant to a written lease, Montana Transport leased a truck owned by Sherrodd, Inc., and driven by Sherrodd's employee, Umbs.

The following facts are taken from Umbs's affidavit:

On May 6, 1985, the truck Umbs was driving went through a motor vehicle inspection in Illinois. A leak was found in a diaphragm in the truck's air brake system and the inspector prohibited further movement of the truck until the leaky diaphragm was repaired. Umbs nevertheless brought the truck back to Montana, under instructions from Sherrodd, Inc. When he reached Montana, Umbs stopped at Sherrodd, Inc.'s yard in Pompey's Pillar. Umbs left the load at Pompey's Pillar and went on to Billings, Montana, in his own car.

Two days later, on the morning of May 10, 1985, Umbs received a phone call from Oliver Ewen, the president of Montana Transport. Umbs told Ewen that he "did not want to drive the truck any further until it was repaired." Ewen told Umbs that he should "either deliver that load today or [Ewen] would find someone else who would." Bob Sherrodd, Umbs's boss at Sherrodd, Inc., then called Umbs and told him to do as Ewen wanted.

Umbs attempted to deliver the load for Montana Transport, believing he would be fired if he did not do so. He was injured when a train hit the truck after the brakes on the truck failed on a downhill grade approaching a railroad crossing.

A Montana Highway Patrol sergeant issued a citation to the truck owners for allowing a defective truck to be operated on the highways. Bond was forfeited.

The train engineer, in his affidavit, said that he observed the truck approaching the crossing and

> It was clear to me that the brakes were not holding, and that the driver was unable to stop because of insufficient brakes. . . I believe that the driver of the truck did everything he possibly could to stop the truck. I have seen many other semis come down that hill, and this driver began braking earlier than most other drivers. In other words, this driver was being much more careful than other semi drivers coming down the hill toward the crossing.

Umbs filed suit against both Sherrodd, Inc., and Montana Transport. Summary judgment was granted to Sherrodd, Inc., on the grounds that it had provided workers' compensation insurance for Umbs and was protected from further liability under the exclusivity provisions of the Workers' Compensation Act. That decision was not appealed.

Montana Transport and Umbs both moved for summary judgment. The motions were briefed and orally argued. The District Court granted Montana Transport summary judgment, ruling that Montana Transport owed no duty to Umbs and that there is no genuine issue of material fact.

Summary judgment is proper when, based upon all the documents before the district court, no genuine issue of material fact is present and one party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. In deciding a motion for summary judgment, all factual disputes must be resolved in favor of the nonmoving party. Harland v. Anderson (1976), 169 Mont. 447, 450, 548 P.2d 613, 615.

Montana Transport argues that, as a matter of law, it owed no duty to Umbs and that therefore summary judgment was proper. The District Court agreed. It determined that federal law did not create a duty on the part of Montana Transport toward Umbs. It also concluded that the lease agreement between Montana Transport

4

and Sherrodd, Inc., did not create any duties on the part of Montana Transport toward Umbs.

Unless a general contractor exerts some form of control over the subcontractor's method of operation, the general contractor is not liable for injuries to the subcontractor's employees. Shannon v. Howard S. Wright Const. Co. (1979), 181 Mont. 269, 275, 593 P.2d 438, 441. There are three exceptions to this general rule of non-liability: 1) where there is a nondelegable duty based on a contract; 2) where the activity is "inherently or intrinsically dangerous;" and 3) where the general contractor negligently exercises control reserved over a subcontractor's work. Micheletto v. State (Mont. 1990), 798 P.2d 989, 991, 47 St.Rep. 1740, 1742. Montana Transport argues that under this Court's recent decisions in Micheletto and Kemp v. Big Horn County Elec. Co-op. (Mont. 1990), 798 P.2d 999, 47 St.Rep. 1768, it is not liable under any of the three exceptions.

In Micheletto, a trench being dug for buried utility cables caved in on the plaintiff, who was working in the trench. Plaintiff brought suit against the State of Montana, the general contractor on the job, whose inspector had been at the construction site that morning looking at the trench. The trial court granted summary judgment for the State. After reviewing the general principles set forth in Shannon, this Court agreed that there was no duty based on any contract provision and that the activity was

5

not inherently or intrinsically dangerous. This Court further stated that

> before liability is found on the basis of control by the general contractor, there must be a contractual provision which establishes that the general contractor has assumed the responsibility for initiating, maintaining and supervising safety precautions as was present in the Stepanek contract.

Micheletto, 798 P.2d at 995. Determining that there was no contract provision by which the State assumed responsibility for safety precautions on the job, this Court affirmed the summary judgment for the State.

In Kemp, the plaintiff was injured when cables broke in a bucket lift in which he was riding. The plaintiff sued the general contractor, alleging failure to furnish a safe place of employment. This Court denied liability under the contract exception because the contract between the general contractor and plaintiff's employer did not provide that the general contractor would be responsible in any way for safety programs. It concluded that the District Court was correct in ruling that the activity was not inherently or intrinsically dangerous. It further held that the issue of actual control was determined by Micheletto and that because there were no contract provisions obligating the general contractor to be responsible for safety programs, there was no negligent exercise of control. Kemp, 798 P.2d at 1003.

6

Umbs argues that Montana Transport owed a duty to him because it was negligent in exercising retained control over his working conditions. As he points out, the difference between Micheletto and Kemp and this case is the extent of control demonstrated by the general contractor. Regardless of whether Montana Transport had a duty to Umbs under federal law, we conclude there is a factual question as to whether it had a duty under state law. Umbs's testimony, viewed in the light most favorable to him, establishes that Montana Transport President Ewen, knowing that the truck's brakes were failing, ordered Umbs to deliver the load. According to Umbs's affidavit, after the call from Ewen, Umbs's boss, Sherrodd, called and told him to do what Ewen said to do. When the facts set forth in Umbs's affidavit are viewed in their most favorable light, and notwithstanding any written contractual provisions, Ewen, with Sherrodd's consent and for Ewen's own benefit, took control of Umbs and the truck and negligently ordered Umbs to drive the truck and deliver the load thereon. These portions of Umbs's affidavit are uncontroverted. There was no such exercise of direct control by the general contractors with the consent of the subcontractors in Micheletto or in Kemp.

The lower court, in its order, quoted Umbs's deposition. The affidavits do not contradict the deposition testimony. They do make a stronger statement in support of Umbs's case. Viewing the evidence in the light most favorable to Umbs, as we must, we may

7

only conclude that Umbs has presented a disputed issue of material fact and that summary judgment for Montana Transport was improper.

This is a unique case and therefore the ruling of this Court is confined to the singular facts which appear in this record.

Reversed and remanded for further action consistent with this opinion.

_____
Hon. Henry Loble, Retired District Judge, sitting in place of Justice Fred J. Weber

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice Diane G. Barz did not participate.

8