No. 99-010

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 112

299 Mont. 389

1 P. 3d 348

ROY BECKMAN,

Plaintiff/Appellant,

v.

BUTTE-SILVER BOW COUNTY,

Defendant/Respondent.

APPEAL FROM: District Court of the Second Judicial District,

In and for the County of Silver Bow,

The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William P. Joyce, Joyce & Starin; Butte, Montana

For Respondent:

William M. O'Leary, Corette, Pohlman & Kebe; Butte, Montana

Submitted and Argued: September 7, 1999

Decided: May 2, 2000

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1 Roy Beckman filed an action against Butte-Silver Bow County in the Second Judicial District Court, Silver Bow County, seeking damages for personal injuries he received when a trench he was working in collapsed. The District Court granted summary judgment in favor of Butte-Silver Bow. Beckman appeals. We reverse.

¶2 Beckman raises the following issues on appeal:

¶3 1. Whether the District Court erred in concluding that as a matter of law trenching is not an inherently dangerous activity?

¶4 2. Whether the District Court erred in concluding that Butte-Silver Bow did not retain sufficient control over Simpson's trenching operations such that it owed a duty of reasonable care to Beckman?

## FACTUAL BACKGROUND

¶5 On May 10, 1995, the trench Roy Beckman was working in collapsed. At the time of the cave-in, Beckman was employed by Simpson Excavating. Simpson Excavating had been hired by Vince Quinlan as part of Quinlan's plan to develop property located on the 1800 block of Arizona Street in Butte, Montana. As there was no existing water service to Quinlan's property, Quinlan contacted the operations manager of Butte-Silver Bow's

Water Utility Division, Mike Patterson. At that time, Butte-Silver Bow's emphasis was to have developers install extensions because Butte-Silver Bow crews were busy with improvements to other parts of the system. Patterson informed Quinlan of Butte-Silver Bow's requirements and specifications for the installation of new water service lines. These requirements and specifications are contained in a document promulgated by Butte-Silver Bow entitled "Water Main Extensions."

¶6 Patterson informed Quinlan that Butte-Silver Bow required water line extensions which served residential areas to be six inches or larger in diameter and that its water main along Taft Street, from which Quinlan was seeking an extension, was a two-inch water line. Butte-Silver Bow would not allow Quinlan to attach a six-inch extension to its two-inch main. Patterson informed Quinlan that because Butte-Silver Bow's crews were busy, Butte-Silver Bow would not be able to replace its two-inch main on Taft Street until the fall of 1995. Quinlan wished to proceed on a faster timetable and reached an agreement with Butte-Silver Bow: Quinlan agreed to dig the trench to replace Butte-Silver Bow's old two-inch water line along Taft Street, between Oregon Avenue and Arizona Street, with six-inch pipe and dig the trench necessary to install Butte-Silver Bow's new six-inch extension to service his property on Arizona Street; Butte-Silver Bow would supply the pipe, fittings, and fire hydrant. After its main was replaced and the extension built, Butte-Silver Bow was to reimburse Quinlan for his costs. Beckman was injured in the trench dug along Taft Street in order to update Butte-Silver Bow's two-inch main.

¶7 The Water Main Extension procedures required Quinlan to obtain approval of his construction plan from the city. Complying with these procedures, Quinlan hired a professional engineer, Gary Swanson of MSE, Inc., to prepare construction diagrams for the project. Butte Silver-Bow approved the plans. Quinlan hired Simpson Excavating to dig the trench and install the water lines.

¶8 On May 9, 1995, Simpson applied for a construction right of way and received permission to begin excavating. That same day, Beckman, one of Simpson's employees, cut the asphalt along Taft Street for a trench four feet wide. On May 10, 1995, Beckman used a backhoe to remove the asphalt cut the previous day. Shortly thereafter, three county employees arrived at the site and began digging a separate trench on Taft Street, east of Oregon Avenue, in order to install a new T-valve connection to allow the hookup of the six-inch replacement line to Butte-Silver Bow's existing water main. While Rick Svejkovsky, one of the county employees, was in the county trench, it partially collapsed and the county employees were forced to widen it. The county employees did not inform

Simpson or his employees about the collapse of their trench. There is an issue of fact concerning whether any county supervisory employees were on site.

¶9 Toward the end of the day, Svejkovsky joined Beckman in the Simpson trench in order to assist Beckman in connecting the pipe fittings for each 20-foot section of pipe. While Beckman and Svejkovsky were in the Simpson trench, Simpson employees began backfilling the county trench. Svejkovsky was in the process of exiting the trench when it collapsed on Beckman.

¶10 On April 17, 1997, Beckman filed a complaint against the City and County of Butte-Silver Bow seeking damages for personal injuries sustained as a result of the trench collapse. Butte-Silver Bow filed a motion for summary judgment. The motion was briefed by both sides. The District Court heard oral argument on September 16, 1998. On November 4, 1998, the court granted summary judgment in favor of Butte-Silver Bow. Beckman appeals from the District Court's Order Granting Summary Judgment.

## STANDARD OF REVIEW

¶11 Our standard of review in appeals from summary judgment rulings is de novo. *See Motarie v. Northern Montana Joint Refuse Disposal Dist.* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156. When we review a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. *See Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. In *Bruner*, we set forth our inquiry:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of material fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law.

*Bruner, 900 P.2d at 903 (citations omitted).*

## DISCUSSION

¶12 Employers are generally not liable for the torts of their independent contractors. *See Umbs v. Sherrodd, Inc.* (1991), 246 Mont. 373, 376, 805 P.2d 519, 520 (citing *Shannon v.*

*Howard S. Wright Constr. Co.* (1979), 181 Mont. 269, 275, 593 P.2d 438, 441). However, this rule is subject to certain exceptions which include: (1) where there is a nondelegable duty based on a contract; (2) where the activity is inherently or intrinsically dangerous; and (3) where the general contractor negligently exercises control reserved over a subcontractor's work. *See Umbs*, 246 Mont. at 376, 805 P.2d at 520. The District Court ruled that none of the exceptions applied to the facts presented and therefore granted Butte Silver Bow's motion for summary judgment.

¶13 On appeal Beckman contends that the District Court erred in two aspects. First, Beckman argues that the trenching operations were inherently or intrinsically dangerous and thus came under one of the exceptions to nonliability. Second, Beckman argues that Butte-Silver Bow retained sufficient control over the project and failed to carefully exercise that control and, consequently, its conduct falls under another exception to nonliability. Under both theories Beckman maintains that his suit against Butte-Silver Bow should have withstood summary judgment. Beckman does not appeal from the District Court's ruling that Butte-Silver Bow did not assume a nondelegable duty by contract.

## ISSUE ONE

¶14 Whether the District Court erred in concluding that as a matter of law trenching is not an inherently dangerous activity?

¶15 We have previously held employers liable for the torts of subcontractors arising out of work that is inherently dangerous or hazardous. *See Ulmen v. Schwieger* (1932), 92 Mont. 331, 12 P.2d 856. In determining whether employers should be held liable for the torts of subcontractors arising out of work that is inherently dangerous, we have looked to the Restatement (Second) of Torts for guidance. *See, e.g., Kemp v. Bechtel Constr. Co.* (1986), 221 Mont. 519, 525, 720 P.2d 270, 274 (hereinafter *Bechtel*). On this issue, the Restatement (Second) of Torts provides:

### § 416. Work Dangerous in Absence of Special Precautions

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such

precautions, even though the employer has provided for such precautions in the contract or otherwise.

## § 427. Negligence as to Danger Inherent in the Work

One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which [the employer] contemplates or has reason to contemplate when making the contract is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

Because the two rules are essentially duplicative of each other, we have considered their application together. *See Bechtel*, 221 Mont. at 525, 720 P.2d at 274-75 (citing Restatement (Second) of Torts § 416 cmt. a).

The District Court ruled as a matter of law, citing our *Bechtel* decision, that the trenching activities in which Beckman was engaged did not fall under the inherently dangerous exception to the general rule of nonliability. In *Bechtel*, we held that an employer was not liable for injuries to a subcontractor's employee when the peculiar risk or inherent danger of the activity engaged in by the subcontractor could have been avoided by standard precautions. *Bechtel*, 221 Mont. at 526, 720 P.2d at 275. Kemp, the plaintiff in *Bechtel,* brought an action against the project owner, the general contractor, and the project engineer after he was injured in a trench cave-in. We observed that OSHA regulations, the project safety manual, and the deposition of a backhoe operator established that either sloping the trench's banks or using a trench box was a standard safety procedure when trenching. We noted that these precautions were not taken, even though Kemp knew a trench box was available.

¶16 In ascertaining whether the defendants were liable for injuries sustained by Kemp, we cited with approval the North Dakota Supreme Court's analysis of §§ 416 and 427 in *Peterson v. City of Golden Valley* (N.D. 1981), 308 N.W.2d 550. In *Peterson*, the North Dakota Supreme Court held that the City of Golden Valley was not vicariously liable for injuries sustained by the plaintiff/employee in a trench cave-in caused by the subcontractor's failure to slope or use a trench box because "this type of excavation when done with standard precautions, presents no extraordinary risk of caving in." *Peterson*, 308 N.W.2d at 554. Following the analysis in *Peterson*, we held that the defendants were not

vicariously liable for the injuries sustained by Kemp. In doing so, we stated:

> In order for Sec. 416 to apply, the work must present "a peculiar risk . . . unless special precautions are taken." Section 427 is only applicable to work "involving a special danger . . . inherent in . . . the work." Here, the type of trenching contemplated in the subcontract presented no peculiar risk or inherent danger. Rather, *the risk or danger arose out of a failure to use standard precautions.*

*Bechtel, 221 Mont. at 526, 720 P.2d at 275 (emphasis added).*

¶17 In dissent, Justice Hunt, joined by Justice Morrison, argued that the majority's holding was a misinterpretation of the Restatement. Justice Hunt asserted that by excluding standard precautions from the scope of §§ 416 and 427, the majority had essentially stripped these sections of any purpose. *See Bechtel*, 221 Mont. at 528, 720 P.2d at 277. Justice Hunt contended that whether an employer remains liable for the torts of its subcontractors turns on the nature of the activity engaged in and not on the existence of "standard" as opposed to "special" precautions for avoiding the risks associated with that activity. *Bechtel*, 221 Mont. at 530-31, 720 P.2d at 278. Referring to the illustrations to §§ 416 and 427, the dissent noted that many of the accidents for which general contractors would be liable under the Restatement could be avoided by using "standard" precautions-e. g., installing a fence around an excavation site or restraining a paint bucket so that it does not fall from scaffolding. *Bechtel*, 221 Mont. at 531, 720 P.2d at 278. The only thing "special" about these precautions, observed Justice Hunt, is that they were necessary to counter inherent risks arising out of particular work situations. *Bechtel,* 221 Mont. at 531, 720 P.2d at 278.

¶18 We affirmed the holding of *Bechtel* in two subsequent opinions. In *Kemp v. Bighorn County Elec. Co-op, Inc.* (1990), 244 Mont. 437, 798 P.2d 999 (hereinafter *Bighorn*), we held that Big Horn was not liable for injuries sustained by Kemp, an employee of Big Horn's subcontractor, when Kemp fell 15 feet to the ground from a High Ranger bucket lift. We observed that the reason the activity in question was dangerous to the plaintiff was because the plaintiff had not taken standard precautions-i.e., wearing a safety belt. *Bighorn*, 244 Mont. at 444, 798 P.2d at 1004. Similarly, in *Micheletto v. State* (1990), 244 Mont. 483, 798 P.2d 989, we held that the State, in its capacity as a general contractor, was not liable for injuries suffered by the plaintiff, an employee of a subcontractor, as a result of a trench cave-in because standard precautions such as sloping or a shoring system were not taken. *Micheletto*, 244 Mont. at 490, 798 P.2d at 994.

¶19 In its decision granting summary judgment to Butte-Silver Bow the District Court respectfully but clearly nudged us to reconsider our decisions in *Bechtel, Bighorn*, and *Micheletto*. Characterizing Justice Hunt's dissent as "well reasoned and well supported" the District Court acknowledged that his analysis was compelling but properly deferred to our recent precedent set forth in *Bechtel*. Taking the District Court's cue, Beckman requests on appeal that we overturn *Bechtel, Bighorn*, and *Micheletto* to the extent we have held that an employer is not liable for the torts of its subcontractor arising out of the performance of an inherently dangerous activity when standard precautions could have been taken to reduce its inherent dangerousness. Beckman argues that this line of cases is founded upon a misinterpretation of §§ 416 and 427 of the Restatement (Second) of Torts. We agree.

¶20 In response, Butte Silver-Bow asserts that the doctrine of stare decisis alone requires us to affirm the *Bechtel* line of cases. We have held that "stare decisis is a fundamental doctrine which reflects our concerns for stability, predictability and equal treatment." *Formicove, Inc. v. Burlington N., Inc.* (1983), 207 Mont. 189, 194, 673 P.2d 469, 472. However, stare decisis is "not a mechanical formula of adherence to the latest decision." *State v. Gatts* (1996), 279 Mont. 42, 51, 928 P.2d 114, 119 (quoting *Patterson v. McLean Credit Union* (1989), 491 U.S. 164, 172, 109 S. Ct. 2363, 2370). Indeed, we have held that stare decisis does not require us to follow a manifestly wrong decision. *See Formicove*, 207 Mont. at 194, 673 P.2d at 472. We now believe that the analysis of the inherently dangerous activity exception contained in the *Bechtel* line of cases is manifestly wrong.

¶21 Prior to the *Bechtel* line of cases, we held that the vicarious liability of an employer of a subcontractor was contingent upon the nature of the work performed and not on the existence of standard precautions. *See Ulmen*, 92 Mont. at 346, 12 P.2d at 859. In *Ulmen*, we affirmed a jury verdict against a general contractor for injuries suffered by a motorist that were caused by the subcontractor's failure to properly warn, by adequate barriers and detour signs, of the existence of a five-foot deep excavation extending across the full width of the highway. As in *Bechtel*, we noted that the erection and maintenance of adequate barriers and detour signs were "the very thing that would prevent the work from being intrinsically dangerous." *Ulmen*, 92 Mont. at 346, 12 P.2d at 859. However, unlike *Bechtel*, we affirmed the liability of the general contractor despite the fact that the precautions not taken by the subcontractor-adequate barriers and detour signs-were without a doubt "standard" precautions for highway excavations. In *Bechtel,* without specifically overruling *Ulmen*, we shifted our focus from the nature of the work performed to the existence of standard precautions.

¶22 In retrospect our decisions in *Bechtel, Bighorn*, and *Micheletto* misinterpreted the interplay of "ordinary" or standard and "special precautions." The distinction described in the Restatement between "ordinary" or standard and "special" precautions depends on whether the precaution is meant to counter a common or a peculiar risk. Employers are not liable for every tort committed by a subcontractor who is engaged in an inherently dangerous or hazardous activity. Rather, an employer is only vicariously liable for those torts which arise from the unreasonable risks caused by engaging in that activity. Restatement (Second) of Torts § 416 cmt. d illustrates the distinction. If a contractor is employed to transport giant logs over the highway, the contractor's employer is not liable for torts caused by the contractor driving in excess of the speed limit. Speeding is not an unreasonable risk particular to transporting logs, but is an ordinary form of negligence which is usual in the community and the prevention of which requires ordinary or standard precautions. However, an employer will be vicariously liable for the contractor's failure to take special precautions to anchor the logs to the contractor's truck. This is because transporting giant logs creates an uncommon hazard that the logs will become disengaged, a hazard not ordinarily encountered in the community which calls for particular precautions to prevent its occurrence.

¶23 Under the Restatement analysis, Butte-Silver Bow would not be liable to Beckman if one of his coemployees negligently operated a pickup truck in the course and scope of his employment, resulting in injuries to Beckman. The careful operation of a motor vehicle requires ordinary and standard precautions. In contrast, trenching, where workers are exposed to the risk of being buried if the operations are not safely conducted, requires the implementation of special precautions. These precautions may include sloping the banks of a trench, mechanically shoring a trench bank, or using a trench box. Such precautions, although arguably standard with regard to the risk posed, are special in that they are designed to protect workers from the unreasonable, extraordinary, and unusual risks associated with trenching operations.

¶24 Accordingly, we overrule *Bechtel, Bighorn*, and *Micheletto* and reaffirm our holding in *Ulmen* that an employer is vicariously liable for injuries to others caused by a subcontractor's failure to take precautions to reduce the unreasonable risks associated with engaging in an inherently dangerous activity. Consequently, we hold that the District Court erred to the extent it concluded that the trenching at issue did not fall within the inherently dangerous activity exception solely because Beckman's injury could have been avoided through the use of "standard" precautions. The risks associated with people working in trenches where a cave-in can cause death or serious bodily injury are well

recognized in the construction industry. Trenching operations of this nature are intrinsically or inherently dangerous as a matter of law.

¶25 This is not to say that every activity on a construction site which may result in death or serious bodily injury is inherently dangerous for purposes of our analysis under the Restatement. Much of the activity that occurs on a construction site, although potentially dangerous, is quite safe when simple, easy to follow safety precautions are taken. We conclude, however, that requiring workers to enter a trench where they could be buried if a cave-in resulted, requires special precautions. Often, the precautions must be tailored to the particular situation. For example, the site in question may not allow for sloping and therefore, other precautions such as shoring, bracing or trench boxes must be used. The proper use of such precautions requires special knowledge and, when not followed or properly applied, may result in instantaneous death to the workers. Thus, we consider such trenching activities inherently dangerous. However, we note that the rules provided in the Restatement (Second) of Torts §§ 416 and 427 are exceptions to the general rule that employers are not liable for the torts of their independent contractors. Therefore, we will apply this exception narrowly.

¶26 Beckman raises another species of the inherently dangerous exception. At the District Court level, Beckman argued that Butte-Silver Bow had a duty to contractually require its contractor, in this instance Simpson, to provide for certain precautions in its trenching activities. An employer of an independent contractor has a duty to provide for precautions when the employer knows or should know that the work engaged in by the independent contractor is inherently dangerous. *See Bechtel*, 221 Mont. at 531-32, 720 P.2d at 278 (Hunt, J., dissenting); W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 71, at 510 (5th ed. 1984). This is a rule of personal or individual liability separate and distinct from an employer's vicarious liability under §§ 416 and 427. *See* Prosser and Keeton, *supra*, § 71, at 510.

¶27 The Restatement (Second) of Torts describes this common-law rule as follows:

### § 413. Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor

One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm

caused to them by the absence of such precautions if the employer

(a) fails to provide in the contract that the contractor shall take such precautions, or

(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

¶28 In his complaint, Beckman raised a claim based on Butte-Silver Bow's "duty to require Simpson to use a trench box for the safety of Simpson's employees." The District Court did not reach this issue in its Order Granting Summary Judgment. However, the court necessarily decided this issue when it determined that as a matter of law trenching is not an inherently dangerous activity. Since we have concluded that the District Court erred when it determined that trenching was not an inherently dangerous activity, we further conclude that Beckman should have been allowed to proceed on this theory as well.

## ISSUE TWO

¶29 Whether the District Court erred in concluding that Butte-Silver Bow did not retain sufficient control over Simpson's trenching operations such that it owed a duty of reasonable care to Beckman?

¶30 Beckman contends that the District Court erred in awarding summary judgment in favor of Butte-Silver Bow because material issues of fact exist concerning the extent to which Butte-Silver Bow retained control over the trenching project. In particular, Beckman contends that Butte-Silver Bow's Water Main Extensions guidelines are evidence that Butte-Silver Bow retained sufficient control to create a duty of care. Butte-Silver Bow asserts that the District Court's award of summary judgment in its favor was proper because there is no evidence that Butte-Silver Bow assumed any contractual responsibility for safety.

¶31 In addition to the inherently dangerous activity exception, an employer can also be liable for the torts of an independent contractor "where there is a nondelegable duty based on contract" or where the employer "negligently exercises control reserved over a subcontractor's work." *Umbs*, 246 Mont. at 376, 805 P.2d at 520. In regard to the nondelegable duty exception, we have held that a general contractor who had assumed contractual obligations to maintain and supervise job safety had assumed such a nondelegable duty which extended to employees of the subcontractor. *See Stepanek v.*

*Kober Constr.* (1981), 191 Mont. 430, 434, 625 P.2d 51, 53.

¶32 An employer or general contractor may also be liable for the injuries suffered by a subcontractor's employees if it negligently exercises control reserved over a subcontractor's work. *See Shannon,* 181 Mont. at 276-77, 593 P.2d at 442; *Bechtel*, 221 Mont. at 526, 720 P.2d at 275; *see also* Prosser and Keeton, *supra*, § 71, at 510. We have looked to the Restatement (Second) of Torts § 414 for guidance in defining the control necessary to establish such a duty. *See Bechtel*, 221 Mont. at 526, 720 P.2d at 275. The Restatement (Second) of Torts § 414 provides:

> ### § 414. Negligence in Exercising Control Retained by Employer
>
> One who entrusts work to an independent contractor, but who retains the control over any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by [the employer's] failure to exercise [its] control with reasonable care.

¶ 33 The comments to § 414 indicate two factors which may be particularly relevant to a determination of whether an employer retained control sufficient to create a duty of safety: if the employer knows or should know that the independent contractor is performing work in an unreasonably dangerous manner, and if the employer retains the authority to direct the manner in which work is to be performed. Restatement (Second) of Torts § 414 cmt. b provides:

> The rule stated in this section is usually, though not exclusively, applicable when a principal contractor entrusts a part of the work to subcontractors, but . . . superintends the entire job. In such a situation, the principal contractor is subject to liability if it fails to prevent the subcontractors from doing even the details of the work in a way unreasonably dangerous to others, *if [it] knows or by the exercise of reasonable care should know that the subcontractors' work is being so done, and has the opportunity to prevent it by exercising the power of control which [the employer] has retained . . . .*

(Emphasis added.)

¶ 34 The District Court concluded that Butte-Silver Bow never agreed to supervise the safety of the trenching operations, and therefore did not assume a nondelegable duty based

on contract that extended to Beckman. The District Court cited our decision in *Micheletto* for the proposition that "before liability is found on the basis of control by the general contractor, there must be a contractual provision which establishes that a general contractor has assumed responsibility for initiating, maintaining and supervising safety precautions as was present in the *Stepanek* contract." *Micheletto,* 244 Mont. at 492, 798 P.2d at 995; *see also Bighorn*, 244 Mont. at 443, 798 P.2d at 1003.

¶35 We agree with the District Court's conclusion that Butte-Silver Bow did not assume a nondelegable duty of safety by contract. However, we believe that *Micheletto* and *Bighorn* provide an incorrect statement of the doctrine of retained control. A contract provision which establishes that the general contractor assumes sole responsibility for initiating, maintaining, and supervising safety precautions might be necessary in order to conclude that a general contractor assumed a nondelegable duty of safety. *See Stepanek*, 191 Mont. at 434, 625 P.2d at 53; *Ulmen*, 92 Mont. at 347, 12 P.2d at 859. However, evidence of such a provision is not necessary to establish that a general contractor or employer had a duty based on a theory of retained control. *See Micheletto*, 244 Mont. at 495, 798 P.2d at 997 (McDonough, J., dissenting) ("[R]egardless of whether the general contractor has assumed safety duties contractually, if the general contractor retains control over *any part* of an independent contractor's work the general contractor has a duty of reasonable care to third parties in exercising such control."); *Umbs*, 246 Mont. at 377, 805 P.2d at 521 (reversing summary judgment in favor of a general contractor because the general contractor knew of the dangerous condition and ordered its subcontractor's employee to continue working).

¶36 In *Umbs*, the president of a company which had leased a truck to the plaintiff's employer ordered the plaintiff to make a delivery despite the fact that the plaintiff had informed him that the truck needed repairs. The plaintiff was subsequently injured when a train hit the truck he was driving after the brakes on the truck failed on a downhill grade approaching a railroad crossing. The trial court granted summary judgment in favor of the defendant, holding that the defendant did not owe the plaintiff a duty, in part, because the lease agreement between the defendant and the plaintiff's employer did not create any duties. We reversed, observing that the facts as set forth in the plaintiff's affidavit when viewed in a light most favorable to him established that the defendant, knowing that the truck's brakes were failing, ordered Umbs to deliver the load. We held that the plaintiff's affidavit raised an issue of material fact concerning whether the defendant negligently exercised retained control such that it was liable for the injuries to its subcontractor's employee.

¶37 Despite seemingly contradictory language in *Big Horn* and *Micheletto* that before liability is found on the basis of control by the general contractor, there must be a contractual provision which establishes that a general contractor has assumed responsibility for initiating, maintaining, and supervising safety precautions, the District Court correctly recognized the distinction between a nondelegable contractual duty and a duty based on the negligent exercise of retained control and went on to analyze Beckman's claim under *Umbs*. The court granted summary judgment in favor of Butte-Silver Bow on the issue of retained control because, unlike Umbs, Beckman did not allege that a Butte-Silver Bow employee ordered him into the trench knowing that the trench was unsafe. Also, the court observed that no one from Butte-Silver Bow supervised Simpson's excavating operations.

¶38 We conclude that based on all the documents before the District Court, when viewed in a light most favorable to the Plaintiff, there are genuine issues of material fact concerning whether Butte-Silver Bow negligently exercised control it retained over Simpson's work. Butte-Silver Bow did not enter into a written contract with Quinlan. Furthermore, we have not been presented with any evidence that would indicate that the oral agreement between Butte Silver-Bow and Quinlan concerning the construction project addressed such issues as supervision and control. Therefore, the only possible evidence that Butte-Silver Bow retained control must be contained in the Water Main Extensions document or in Simpson's street opening permit. Several provisions of the Water Main Extensions document are particularly relevant to a determination of whether Butte-Silver Bow retained control over Simpson's activities. Importantly, this document states that Butte-Silver "*may provide supervision* over a water extension project." The document further provides, "It shall be Butte-Silver Bow's responsibility to furnish a qualified construction inspector *for monitoring all construction work* performed during the installation of the extension to the water supply system." In this regard, we note that both parties agree that Butte-Silver Bow employees were present at the job site. Moreover, the Water Main Extensions document states that "the materials *and methods of construction . . .* shall conform to the requirements of Butte-Silver Bow."

¶39 When viewed in a light most favorable to the Plaintiff, the facts listed above establish that Butte-Silver Bow retained the means with which to both discover and cure any unreasonably dangerous conditions created by Simpson's work. Accordingly, we conclude that the terms of the Water Main Extensions document, combined with the fact that Butte Silver-Bow employees were present during the Taft Street trenching operation, are sufficient to preclude awarding summary judgment in favor of Butte-Silver Bow.

¶40 The District Court Order Granting Summary Judgment in favor of Butte-Silver Bow is reversed and remanded for proceedings consistent with this opinion.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART

Justice Karla M. Gray, specially concurring.

¶41 I concur in the results reached by the Court and in most of the analysis used to reach those results. I write separately primarily to clarify the reasons for my concurrence, since I am not persuaded those reasons are clear from the Court's opinion.

¶42 In reviewing the various Restatement sections at issue in this case, it is apparent that liability can attach only to an owner or general contractor--that is, one who employs an independent contractor to perform work. In this case, Butte-Silver Bow did not "employ" either Quinlan or Simpson in the usual sense of the word. However, Butte-Silver Bow and Quinlan reached an oral agreement pursuant to which Quinlan agreed to dig the trench to replace Butte-Silver Bow's old two-inch water line along Taft Street with six-inch pipe. Moreover, comment *a.* to Restatement § 409 defines independent contractor as "any person who does work for another under conditions which are not sufficient to make him a servant of the other. It is immaterial whether the work is done gratuitously or is done for pay. . . ." Under the circumstances present in this case, therefore, I conclude that Butte-Silver Bow was the employer of Quinlan, who filled the "general contractor" role in Restatement parlance, and, in turn, that Simpson--Beckman's employer--was the

subcontractor. Finally, as the Court observes, "Beckman was injured in the trench dug along Taft Street [by Simpson] in order to update Butte-Silver Bow's two-inch main." Thus, the accident and injury occurred on the Butte-Silver Bow portion of the project, thereby bringing Butte-Silver Bow into the picture as a potential tortfeasor.

¶43 With regard to Butte-Silver Bow's primary argument that the *Bechtel*, *Bighorn* and *Micheletto* Trilogy should be retained on *stare decisis* grounds, I would agree if it were not so clear that those cases were "manifestly wrong." After close study of Beckman's analyses pointing out the error therein, the inherently dangerous activity exception set forth in those cases simply does not withstand scrutiny. It appears that those decisions were based on only a surface look at the Restatement and not on any substantive review of the related discussions and comments which are intended to further illuminate the black-letter law set forth in the various sections.

¶44 Nor does Butte-Silver Bow advance any substantive argument under which those decisions are legally supportable. It merely points out that federal courts applying Montana law have followed our rulings. To say so, however, is merely to state the obvious--that federal courts applying Montana law are bound by this Court's precedents on questions of Montana law. That the federal courts have well and truly discharged their obligation does not add weight or authority to the legal soundness of the decisions.

¶45 In addition, Butte-Silver Bow's contention at oral argument that, in the event we overrule the Trilogy, our decision should be prospective because Butte-Silver Bow was entitled to rely on settled Montana law, must be rejected. While the contention has surface appeal on fairness grounds, and while it is asserted with some frequency in cases which might involve a change in controlling law, the fact is that the "prospective application" argument would result in this Court issuing an entirely advisory opinion which would not settle the law in the case before us on appeal. Such an approach or any permutation thereof would obliterate our *raison d'etre*.

¶46 Having agreed with the Court's analysis of Butte-Silver Bow's potential tort liability under various Restatement sections and, specifically, under §§ 416 and 427--the exceptions to the general rule that employers are not liable for the torts of their independent contractors-- I must express concern about where this decision will take both this Court and those subject to it. Under § 409, the general rule remains that employers are not liable for the torts of their independent contractors or subcontractors. Thus, it is incumbent on us to apply the exceptions narrowly, as the Court expressly undertakes to

do, lest we allow the exceptions to swallow the general rule.

¶47 Finally, I do not agree with one portion of the language used by the Court in its discussion of negligent exercise of retained control. I do not think liability can be premised on the language in Butte-Silver Bow's Water Main Extensions document which says Butte-Silver Bow "may provide supervision" over a water extension project. The fact that supervision may be provided is, in my view, insufficient to either require supervision or ground liability on any failure to provide supervision. I do agree, however, that the provision making Butte-Silver Bow responsible for furnishing a qualified construction inspector "for monitoring all construction work" performed pursuant to the Water Main Extensions document is sufficient to establish potential liability for Butte-Silver Bow in this case.

/S/ KARLA M. GRAY