No. DA 06-0035

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 12

RAYMOND M. CUNNINGTON,

    Plaintiff and Appellant,

    v.

MIKE GAUB, d/b/a ZEBRA CONSTRUCTION,
and ALRICK HALE,

    Defendants and Respondents.

APPEAL FROM:    The District Court of the Eleventh Judicial District,
                In and For the County of Flathead, Cause No. DV-03-249C,
                Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Stephen C. Pohl, Attorney at Law, Bozeman, Montana

        For Respondents:

            John E. Bohyer and Fred Simpson, Phillips & Bohyer, P.C.,
            Missoula, Montana

            Mike Gaub, pro se, Missoula, Montana

                                    Submitted on Briefs:   November 22, 2006

                                                Decided:   January 23, 2007

Filed:

        _____
                            Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Plaintiff Raymond M. Cunnington was injured when he fell from makeshift scaffolding while putting up siding on a house under construction in Flathead County. Cunnington sued Defendant Mike Gaub, his direct employer, and Defendant and Respondent Alrick Hale, the owner of the house which was under construction. The District Court granted Hale's motion for summary judgment on the basis that Hale owed no duty to Cunnington. Cunnington appeals the grant of summary judgment for Hale. We affirm in part, reverse in part, and remand for further proceedings.

¶2     We restate the issues as follows:

¶3     1. Did the District Court err in concluding that Cunnington's work on the makeshift scaffolding was not an inherently dangerous activity when Cunnington admitted that no special precautions were necessary to render the activity safe?

¶4     2. Did the District court err in concluding that there is no genuine issue of material fact as to whether Hale exercised sufficient control over the project to establish potential liability?

**BACKGROUND**

¶5     Hale, since 1984, has worked as an estimator and manager of a construction company which builds roads, provides ready-mix concrete, and performs asphalt paving, gravel crushing, and other similar work. Hale lived with his family in Missoula until 2001, when they moved to Kalispell. A few years before building the home at issue here, Hale had built a second home in Whitefish. He acted as the general contractor on that house, and he and his

2

father, Martin Hale, dug the foundation, poured the concrete, and were in charge of the electrical, plumbing and painting work. Hale hired subcontractors to do the framing, roofing, siding and sheet rocking for the Whitefish house.

¶6     In June 2002, Hale and Gaub entered into a construction contract whereby Gaub agreed to build a home for Hale in Flathead County on the shore of Bitterroot Lake. Although Gaub was apparently responsible for building the structure of the 4,400 square foot home, Hale again undertook responsibility for the excavation, concrete, plumbing and electrical work. The contract is silent as to who was responsible for safety on the project. During construction, Hale was on site almost every day.

¶7     On September 12, 2002, Gaub erected a makeshift scaffold that he and Cunnington used to nail siding to the house. The scaffold consisted of a scaffolding plank laid over a sawhorse and a eight foot stepladder, which was folded and leaned against the wall with the bottom resting in a pit in front of the basement window. Gaub had apparently asked Hale three or four times to complete the backfilling so that he could finish the siding. Hale's response, according to Gaub, was that he had other projects he needed to finish first.

¶8     Gaub instructed Cunnington to stand on the scaffolding plank. When Cunnington was unable to reach the top piece of siding, Gaub suggested that he place a three-foot stepladder on top of the scaffolding plank. Cunnington did as he was instructed but, as soon as he stepped onto the three-foot ladder, the apparatus kicked out from under him and he fell into the window pit. Cunnington sustained a severe fracture/dislocation of his right foot and ankle in the fall.

3

¶9 When Cunnington was injured, Hale and his father were on site, installing the drain tile in the septic system. For a while after the accident, Gaub continued to work on the house. However, in early October, Gaub presented Hale with an invoice for about $15,000 which Hale refused to pay until Gaub obtained a release from Cunnington discharging Hale from any liability regarding Cunnington's accident. Gaub was unable or unwilling to obtain the release, and soon thereafter packed up his supplies and left the worksite. Hale then hired out the remaining work to subcontractors who completed the siding, finish work, closets and doors.

¶10 Cunnington later filed a complaint alleging that both Gaub and Hale were negligent and had violated the Montana Safety Act, and claiming that Gaub violated the Montana Scaffolding Act. Cunnington later amended the complaint to allege that Hale is vicariously liable for Gaub's negligence. Hale eventually filed a motion for summary judgment claiming he had no liability for Cunnington's injuries. Cunnington opposed Hale's motion and filed his own motion for partial summary judgment.

¶11 On March 28, 2005, the District Court granted Hale's motion as against Cunnington, denied Cunnington's motion as to Hale, and granted Cunnington's motion for partial summary judgment on the issue of liability as to Gaub. The court determined that summary judgment for Hale was appropriate because Cunnington failed to show the existence of a legal duty on the part of Hale. Specifically, the court concluded that, as to Hale, Cunnington's accident was not foreseeable, and that Hale did not exercise any control over the project or Cunnington. Further, the court concluded that Cunnington was not engaged in

4

an inherently dangerous activity because Cunnington admitted that no special precautions were necessary to render the activity safe. From the court's order, Cunnington appeals.

## STANDARD OF REVIEW

¶12 We review a district court's grant of summary judgment *de novo* applying the same standards as the trial court pursuant to M. R. Civ. P. 56. *Montana Mountain Products v. Curl*, 2005 MT 102, ¶ 8, 327 Mont. 7, ¶ 8, 112 P.3d 979, ¶ 8 (citations omitted). The district court must decide, while viewing the offered proof in the light most favorable to the non-moving party, whether there exists any genuine issue of material fact. *Montana Mountain Products*, ¶ 8 (citations omitted). If none exists, the district court must then decide whether to grant the motion as a matter of law. *Montana Mountain Products*, ¶ 8 (citations omitted).

## DISCUSSION

¶13 We have long recognized the general rule that absent some form of control over the subcontractor's method of operation, the general contractor and owner of a construction project are not liable for injuries to the subcontractor's employees. *Shannon v. Wright*, 181 Mont. 269, 275, 593 P.2d 438, 441 (1979) (citations omitted). There are, however, three exceptions to the general rule: (1) where there is a nondelegable duty based on a contract; (2) where the activity is "inherently or intrinsically dangerous;" and (3) where the general contractor negligently exercises control reserved over a subcontractor's work. *Umbs v. Sherrodd, Inc.*, 246 Mont. 373, 376, 805 P.2d 519, 520 (1991) (citations omitted).

¶14 Both parties agree that the construction contract did not impose upon Hale a nondelegable duty concerning workplace safety. Therefore, the only issues to be resolved

5

are whether the scaffolding work was inherently dangerous and whether Hale exercised sufficient control over the project to be subjected to liability.

¶15 **1. Did the District Court err in concluding that Cunnington's work on the makeshift scaffolding was not an inherently dangerous activity when Cunnington admitted that no special precautions were necessary to render the activity safe?**

¶16 An inherently dangerous activity is one, like large-scale trenching, that requires "special precautions" to prevent injury or death. *See Beckman v. Butte-Silver Bow County*, 2000 MT 112, ¶¶ 24-25, 299 Mont. 389, ¶¶ 24-25, 1 P.3d 348, ¶¶ 24-25. The District Court concluded that the scaffolding work was not an inherently dangerous activity primarily because, in the court's words, Cunnington "[admitted] that no special precautions were necessary to render the activity in this case safe, therefore, the activity could not be inherently dangerous." Though the court does not cite to a particular part of the record, its conclusion that Cunnington admitted no special precautions were necessary is presumably based on language in Cunnington's summary judgment reply brief, where he notes that "[i]n the present action, the precautions need not even have been special. The use of an actual scaffold . . . would have been sufficient to prevent Cunnington's injury."

¶17 On appeal, other than generally claiming that the scaffolding work was inherently dangerous, Cunnington does not directly contest the court's conclusion that he admitted no special precautions were necessary, nor does he point to any part of the record to contradict the court's conclusion. We therefore affirm the District Court.

**¶18    2. Did the District court err in concluding that there is no genuine issue of material fact as to whether Hale exercised sufficient control over the project to establish potential liability?**

¶19    An owner-contractee may be liable for injuries sustained by a subcontractor's employee if the owner retains sufficient control over the property on which the work is performed, though the owner need not retain control over the specific manner in which the worker himself performs. *See Shannon,* 181 Mont. at 277, 593 P.2d at 442. In *Shannon*, the employee was injured when he fell from a ladder while trying to gain access to the upper level of a condominium that was under construction. *Shannon*, 181 Mont. at 271, 593 P.2d at 439. On appeal, Big Sky, the owner, argued that it owed no duty to the employees of its subcontractors. We affirmed the verdict for the employee, holding that, because Big Sky exercised sufficient control over the project, it had a duty to the employee and was thus liable for the employee's injuries. *Shannon*, 181 Mont. at 283, 593 P.2d at 446.

¶20    As evidence of control, we noted that Big Sky demanded that work at another section of the project proceed first, and that Big Sky would not allow stairs to be built until certain pipes were in place, actions which led to the use of the ladder on which plaintiff was injured. *Shannon*, 181 Mont. at 277-79, 593 P.2d at 442-43. Further, Big Sky instructed the subcontractor to proceed with the work on the second floor, even though the stairs were not in place, because the condos were already sold and purchasers had been promised completion dates. *Shannon*, 181 Mont. at 278, 593 P.2d at 443. Thus the evidence showed that Big Sky had more than "a general right to inspect the work of the subcontractor. Specifically it

7

show[ed] that Big Sky . . . could and did exercise control over" how the employees reached the upper levels of the condos. Thus, "[t]he extra hazards created by the need to use extension ladders [could] be attributed directly to . . . Big Sky." *Shannon*, 181 Mont. at 279, 593 P.2d at 443.

¶21 In *Beckman*, we considered not only whether the trenching operation commissioned by the county was inherently dangerous, but also whether there were issues of material fact concerning whether the county retained sufficient control such that it owed a duty to the plaintiff. *Beckman*, ¶ 29. We looked to the Restatement (Second) of Torts § 414 for guidance in defining the control necessary to establish this duty:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by [the employer's] failure to exercise [its] control with reasonable care. *Restatement (Second) of Torts § 414.*

¶22 We further considered the comments to § 414, which discuss two factors relevant to whether the employer retained sufficient control: (1) if the employer *knows or should know* that the independent contractor is performing work in an unreasonably dangerous manner; and (2) if the employer retains the *authority to direct* the manner in which work is to be performed. *Beckman*, ¶ 33. Given that the county was experienced in trenching operations, that county employees were present, and that there was language of control in the Water Main Extensions document, we concluded that there were genuine issues of material fact concerning whether the county negligently exercised control it retained over the work. *Beckman*, ¶¶ 38-39.

8

¶23    Reading *Shannon* and *Beckman* together, an owner may be held liable for the injuries sustained by the employee of a subcontractor if the owner exercised control in such a way as to create the dangerous condition, per *Shannon*, or if the owner knew or should have known of the dangerous condition and retained sufficient authority to direct how the work was performed, per *Beckman*.

¶24    The facts of the case before us, when considered in the light most favorable to Cunnington, show genuine issues of material fact concerning whether Hale negligently exercised control it retained over Gaub's work. Hale, like the representatives for Big Sky in *Shannon*, was at the construction site almost every day and, additionally, unlike Big Sky, was responsible for a large portion of the work, including the excavation, plumbing, electrical, and concrete work. Specifically, Hale was in charge of backfilling the area surrounding the accident site, including the window pit which Cunnington fell into. Gaub testified that he asked Hale three or four times to backfill around the windows so that he could complete the siding. Also, as in *Shannon*, there was an approaching deadline (the contract called for the house to be completed in 120 days) and Hale may have been pushing Gaub to work faster as Gaub was behind schedule to finish the house on time.

¶25    Additionally, Hale testified in his deposition that he acted as "general contractor" for the Whitefish house, and admitted that he built the house himself, with his father. Hale performed the same jobs (excavation, plumbing, electrical, and concrete) during construction of the house at issue here, which is evidence not only of control, but also of Hale's general

9

house building experience. As further evidence of control and general knowledge of construction, Hale took over after Gaub quit and subcontracted what work remained.

¶26 Hale contends that he did not know Gaub was requiring Cunnington to use the makeshift scaffolding and did not see Cunnington use the scaffolding when he was hurt. However, Hale is not required to have knowledge of the specific manner in which Cunnington was performing the work, but only of the general dangerous condition. Here, although Hale was apparently aware that the area around the window pits needed backfilling, he put off doing so because he wished to complete other projects first. While scaffolding still would have been necessary even if Hale had completed the backfilling, backfilling might have leveled the surface so that normal scaffolding could have been used instead of the contraption that apparently caused Cunnington's injuries. Hale's actions, or more properly his inaction, thus may have led to the use of the makeshift scaffolding on which Cunnington was injured.

¶27 It is clear from our review of the record that there are genuine issues of material fact as to whether Hale retained sufficient control over the work to subject himself to liability. Accordingly, we conclude that the District Court erred in granting summary judgment on the issue of control.

**CONCLUSION**

¶28 We affirm the District Court's conclusion, based on Cunnington's admission that no special precautions were necessary, that the scaffolding work was not an inherently dangerous activity, reverse the court's grant of summary judgment concerning whether Hale

10

exercised sufficient control over the project to establish potential liability, and remand for further proceedings consistent with this Opinion.


/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ BRIAN MORRIS