JUSTICE NELSON
delivered the Opinion of the Court.
This is an appeal by the defendants and a cross-appeal by the plaintiffs from a jury verdict in favor of the plaintiff, Darlene Knutson in a “slip and fall” case. The jury attributed negligence to the defendants Timothy C. Barbour, James E. Nelson, d/b/a T.J.’s Lounge (80%) and found Darlene Knutson comparatively negligent (20%). Both parties appeal certain issues. We reverse and remand.
ISSUES
Although numerous issues were appealed and cross-appealed, we dispose of this case upon the following two issues:
I. Did the District Court err in concluding that the Uniform Building Code (UBC) applied in this case as a matter of law?
II. Is the $50,000 distinction in § 27-1-308, MCA, unconstitutional in that it violates the equal protection and due process clauses of the Montana Constitution?
FACTUAL BACKGROUND
On Wednesday, April 4, 1990, Darlene Knutson made plans with her friend, Shelly Hagen, to socialize at Joe’s Place, a tavern in Great Falls. Darlene drove to the Holiday Village Mall to retrieve Shelly at 5:30 p.m. and then drove to Joe’s Place. Darlene testified that she had two drinks during the time spent at Joe’s Place, and Shelly’s testimony supports that statement.
At approximately 8:30 p.m., Shelly and Darlene left Joe’s Place and went to T.J.’s Lounge, another tavern, to meet Shelly’s friend. At the time they left Joe’s Place, the weather was turning to sleet.
Darlene drove her car to T.J.’s and parked south of the alley in the Evergreen Mall parking lot. T.J.’s customers commonly park across the alley in the mall parking lot and use the “back door.” The area is paved and slopes from the alley toward the rear door of T.J.’s and *172 customers entering the lounge must walk through this sloped, paved area.
Darlene and Shelly were walking toward T.J.’s when Darlene remembered she left a special T.J.’s “discount drink” mug in her vehicle. She returned to the car, retrieved her mug, and walked toward T.J.’s again. On her way to T.J.’s, she slipped and fell. Her friend, Shelly and an unidentified man carried her into T.J.’s lounge. Darlene’s husband, Ron Knutson, was called and was informed of the incident. He arrived at T.J.’s with the couple’s son and drove Darlene to Columbus Hospital.
Dr. Powers, an orthopedic surgeon, attended Darlene. His examination revealed that she had “an oblique fracture of the supercondylar area of the femur.” Eventually, Darlene required four operations to facilitate the healing process in her leg.
PROCEDURAL BACKGROUND
The plaintiffs/respondents Daflene and Ron Knutson, filed their complaint and demand for jury trial on January 8, 1991. The defendants/appellants Timothy C. Barbour and James E. Nelson, d/b/a T.J.’s Lounge, filed a motion to dismiss, or in the alternative, motion for a more definite statement, on February 11,1991. Subsequently, the defendants filed an answer on March 8, 1991. :
Ajury trial commenced on October 26,1992. On November 2,1992, the jury returned a verdict for Darlene Knutson in the amount of $325,000.00. However, the jury determined that the percentage of Darlene’s comparative negligence was twenty percent. Ron Knutson was not awarded damages for his loss of consortium claim.
The defendants appealed on February 26, 1993, from the final judgment dated January 6,1993, from an order of January 4,1993, denying defendants’ post trial motions and from an order of February 1, 1993, denying the defendants’ motion for a new trial. The plaintiffs brought a cross-appeal on March 1, 1993, from the final judgment on January 6,1993, from an order dated January 4,1993, wherein the District Court reduced the jury verdict by $62,285.89 and failed to grant Ron Knutson’s motion for a new trial on the issue of damages.
*173 DISCUSSION
I. THE APPLICATION OF THE UNIFORM BUILDING CODE (UBC)
Did the District Court err in concluding that the Uniform Building Code (UBC) applied in this case as a matter of law?
The trial court judge in the present case issued an order on October 14, 1992, granting the plaintiffs’ motion to apply the requirements of the UBC to the area where Knutson fell and sustained her injury. The trial court ruled that the “ramp” upon which Knutson fell was subject to the requirements of the 1979 Uniform Braiding Code which had been previously adopted by ordinance by the City of Great Falls. As a result, at trial the court instructed the jury on negligence per se.
The District Court’s order is particularly troubling because of the fact that there was no evidence upon which to base a ruling that a) the area in question was a “ramp” within the meaning of the UBC; and b) the UBC applied to the area in question. To the contrary, however, there was testimony that the area in question was not a “ramp” within the meaning of the UBC. The appellants provided expert testimony from a former Great Falls City Engineer stating that:
[T]he Uniform Building Code requirements regarding ramps ... do not apply to the area where Plaintiff describes she had fallen. Further, the City of Great Falls would not and did not apply this standard to an area of the type behind T.J.’s Lounge. Finally, application of the Uniform Building Code in the manner described in Plaintiff’s Complaint requiring hand rails in an area which is also used for parking is neither practical nor feasible because more problems would be created than solved.
Moreover, at a later date, the appellants filed another affidavit from a professional member of the International Conference of Building Officials, the body which publishes the UBC, stating that the area in question was “not a ramp as described by Plaintiffs. Both by definition and by general limits of the Uniform Building Code, the Uniform Building Code has no application to the area in question.”
The Knutsons offered no expert testimony or opinion affidavits regarding the applicability of the UBC to the area in question in their brief in support of their motion to have the trial court determine the applicability of the UBC. Their proof simply assumed the applicability of the UBC and went solely to the angle of slope of the area in question. Furthermore, they did not offer expert testimony, affidavits *174 or evidence at any later point to support their conclusion that the area in question was a “ramp” as envisioned by the UBC. The Knutsons, and then the District Court, assumed that the area in question was a ramp and did not discuss, for all practical purposes, the UBC definitions for “ramp,” or any evidence of any substance to support their conclusion in that regard.
The UBC does not define the term “ramp” anywhere in the Code. The Code specifically provides that where terms are not defined, Webster’s Third New International Dictionary of the English Language, Unabridged, copyright 1961, will provide the ordinary accepted meaning for that term. The aforementioned dictionary defines “ramp” as “a sloping way: as a: a sloping floor or walk leading from one level to another. ...” The area in which Knutson fell is neither a floor nor a walk. This definition contemplates a structure which is built to lead from one area to another. Timothy Barbour stated in an affidavit that the area in question was asphalted at the time the building was originally constructed in 1965 and has remained unchanged with the exception of the area where Godfather’s Pizza now stands. The area serves as the parking lot for the Godfather’s Pizza delivery vehicles and must be traversed to enter the back door of T. J.’s Lounge.
The trial court, however, without any analysis or reasons stated, simply concluded that the area in question was a ramp, and assumed the applicability of the UBC. Given our reading of the UBC and applicable case law, within this jurisdiction and without, the area in question is more akin to a driveway, or a sloped parking area, than the type of ramp envisioned by the UBC. The cases from outside this jurisdiction generally have applied the UBC to concrete sidewalks and walkways constructed specifically to facilitate egress or ingress to a building. See Mortimer v. Martin (Ca. 1957), 308 P.2d 840; Sorensen v. Western Hotels, Inc. (Wa. 1960), 349 P.2d 232; Miller v. Broadmoor Village, Inc. (La. 1975), 321 So.2d 925; Grand Union Co. v. Rocker (Fl. 1984), 454 So.2d 14; Foster v. Kwik Chek Super Markets, Inc. (Ala. 1969), 224 So.2d 895. The area in question here serves primarily as a parking lot for pizza delivery vehicles. We have found no authorities which have applied the UBC ramp requirements to an area similar to where Knutson fell, and, as pointed out above, the expert opinion evidence presented to the District Court on the applicability issue was that the area was not a ramp nor was the area covered by the UBC.
*175 Davis v. Church of Jesus Christ of LDS (1990), 244 Mont. 61, 796 P.2d 181, and Herbst v. Miller (1992), 252 Mont. 503, 830 P.2d 1268, the two Montana cases which address the UBC, both applied the UBC to the areas at issue in their respective cases, without any analysis of the UBC’s applicability and without that issue being raised. Davis involved the plaintiff’s fall on a sidewalk outside a Latter Day Saints’ church as she was leaving the building and walking toward her automobile. The sloping cement walkway was specifically built by the Church to facilitate ingress to and egress from the church building.
A key issue in Davis was the slope of the portion of the sidewalk which led to the front doors of the church because under the UBC, handrails must be provided on any slope greater than ten percent and there were no handrails provided for this area of the sidewalk. Both sides presented conflicting testimony about the slope of the sidewalk, from less than ten to twenty-five percent and this Court found that there was substantial evidence to support the jury’s conclusion that the Church was seventy-six percent responsible for the injury sustained by Davis. There is no analysis of the applicability of the UBC in Davis with liability being premised upon a landowner’s duty to use ordinary care in maintaining his premises in a reasonably safe condition.
Herbst involved Herbst’s fall down the cement stairwell on the outside of a building owned by defendant Miller. Herbst was using the stairs to enter an apartment in the building. The stairwell had been specifically built to facilitate ingress and egress to the apartment. There was no handrail along the stairwell, and as Herbst was descending the stairs, she slipped and fell. This Court concluded that Miller was in violation of the State Building Code at the time of the construction of the building and was in violation of the town’s building code at the time of the accident. Although Herbst was concerned with the UBC, there was no analysis about whether the UBC applied to the area in question; there was simply a blanket assumption that the UBC did apply.
We suspect that a similar assumption guided the trial court in the present case since no reasons are given for the court’s conclusion that the area in question was a “ramp” in its order granting plaintiffs’ motion that the area where Knutson fell was subject to the requirements of the UBC. In reviewing a trial court’s conclusions of law, this Court must determine whether the tribunal correctly applied the law. Steer Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-475, 803 P.2d 601, 603. Our review convinces us that the trial court *176 incorrectly applied the UBC to the instant case. All the evidence before the court was to the effect that the area in question was not a “ramp” within the meaning of the UBC and that the UBC did not apply in the instant case. ;
The appellants argued that the District Court erred in not applying landowner liability law in this case, including the principles of notice and knowledge of a dangerous condition. The respondents emphatically denied that landowner liability law applied to the instant case. We agree with the appellants that this case is purely and simply a landowner liability case. Even Davis] is similar to the present case in many respects and also involved issues of landowner liability, stating that “[a] landowner has a duty to use ordinary care in maintaining his premises in a reasonably safe condition or to warn those legally on the land of any hidden or lurking dangers.” Davis, 244 Mont. 61, 796 P.2d at 184. This is the issue in the present case — whether T. J.’s Lounge exercised ordinary care in maintaining its premises in a reasonably safe condition.
We hold that the District Court erred in concluding that the UBC applied as a matter of law to the area where Knutson fell and by instructing the jury that the violation of the UBC constituted negligence per se. Accordingly, we reverse and remand for new trial.
II. THE CONSTITUTIONALITY OF SECTION 27-1-308, MCA.
Is the $50,000 distinction in § 27-1-308, MCA, unconstitutional in that it violates the equal protection and due process clauses of United States and the Montana Constitutions?
The respondents challenge the validity of a clause in § 27-1-308(1), MCA, under the United States and Montana Constitutions. They assert that the clause in the statute violates due process and equal protection rights under both constitutions.
Section 27-1-308(1), MCA, provides:
27-1-308. Collateral source reductions in actions arising from bodily injury or death —subrogation rights. (1) In an action arising from bodily injury or death when the total award against all defendants is in excess of $50,000 and the plaintiff will be fully compensated for his damages, exclusive of court costs and attorney fees, a plaintiff’s recovery ¡must be reduced by any amount paid or payable from a collateral source that does not have a subrogation right.
*177 At the outset, we note that Knutsons do not challenge the constitutionality of the modification of the collateral source rule as codified by § 27-1-308, MCA, as a whole. Rather, the Knutsons challenge on constitutional grounds only the clause in subsection (1) of the statute which states that “when the total award... is in excess of $50,000 and the plaintiff will be fully compensated for his damages, exclusive of court costs and attorney fees, a plaintiff’s recovery must be reduced by any amount paid or payable from a collateral source. ...” Section 27-1-308, MCA.
Inasmuch as we have not previously had the opportunity to pass upon the constitutionality of the modifications to the collateral source rule, we are not convinced that it is appropriate that we undertake that analysis on the limited issue framed by the parties — i.e. whether the distinction between those persons whose awards total $50,000 and those whose awards exceed $50,000 is unconstitutional because it does not treat similarly situated individuals in the same maimer by the government. Butte Community Union v. Lewis (1986), 219 Mont. 426, 430, 712 P.2d 1309, 1311.
More importantly, in view of our determination to remand this case for new trial, it is arguable that, at this juncture, Knutsons are without standing to challenge the constitutionality of the statute.
Accordingly, we decline to address the constitutionality of the modifications to the collateral source rule at this time.
REVERSED AND REMANDED FOR NEW TRIAL.
CHIEF JUSTICE TURNAGE, JUSTICES HARRISON, GRAY and WEBER concur.