No. 00-695

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 142

CLIFFORD B. CHAMBERS,

        Plaintiff, Respondent, and Cross-Appellant,

   v.

THE CITY OF HELENA, MONTANA,

        Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                In and for the County of Lewis and Clark,
                The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Leo S. Ward, G. Andy Adamek, Browning, Kaleczyc, Berry & Hoven,
Helena,                Montana

        For Respondent:

                Thomas F. Dowling, John Bobinski, Dowling Law Firm, Helena, Montana

Submitted on Briefs:  April 19, 2001

Decided:  June 21, 2002

Filed:

_____
                         Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1      Appellant City of Helena (City) appeals two rulings of the First Judicial District Court, Lewis and Clark County, holding the City negligent per se and granting Respondent Clifford Chambers' (Chambers) motion for a new trial. Chambers cross appeals an order of the District Court denying his motion to amend his complaint to include a claim for strict liability. We affirm in part and reverse in part and remand for further proceedings consistent with this Opinion.

¶2      We address the following issues on appeal in the same order as originally presented to the District Court:

¶3      1. Did the District Court err in holding that the operation of the transfer station was not an abnormally dangerous activity subject to strict liability?

¶4      2. Did the District Court err in holding the City negligent per se regarding its application of the Uniform Building Code (UBC)?

¶5      3. Did the District Court abuse its discretion in granting Chambers a new trial on the issue of causation?

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶6      On or about November 5, 1996, Chambers was injured at the City's garbage transfer station. This transfer station has a concrete collection pit, approximately 8.5 feet deep, into which users of the transfer station deposit their garbage. At the time of the events that gave rise to this action, the pit did not have guardrails, but had curbs lining the edge. When Chambers came to unload his garbage, he parked a few feet away from the edge of the pit. With his back to the pit, he began pulling a screen door out of the back of his truck to unload the garbage. When the part of the door he was pulling on broke off, Chambers fell backward toward the pit, stumbled on a curb at the edge of the pit and fell into the pit. Rita Therriault (Therriault) was with Chambers and witnessed the

2

accident. The fall injured his ankles, one knee, and back among other things. Chambers then brought a negligence action against the City for damages.

¶7 Before trial, Chambers made a motion to amend his complaint to include the theory of strict liability as a cause of action. Chambers asserted that the design of the transfer station resulted in a use that was an abnormally dangerous activity warranting strict liability because users of the station were required to throw garbage into the 8.5 feet deep, concrete pit which was not protected with railings or any devices to prevent falls into the pit. The City opposed the motion asserting that the motion was untimely and would result in undue prejudice. The City also argued that use of the pit design did not constitute an abnormally dangerous activity. The District Court ruled that while it would normally grant the motion, it would not do so in this case because use of the pit did not constitute an abnormally dangerous activity as a matter of law. The court did note that the facts of the case might fit a negligence per se cause of action.

¶8 After the close of evidence at trial, the court addressed the issue of negligence per se. The court interpreted a UBC provision adopted by the City as an ordinance. This ordinance requires guardrails whenever an open floor or roof is more than 30 inches above the grade of the floor below. Although the City asserted that the "loading dock" exception to the UBC ordinance properly applied to the pit and therefore guardrails were not required, the District Court disagreed and held the City negligent per se for its failure to install guardrails around the pit.

¶9 After closing arguments, the court submitted the issues of causation and damages to the jury. The jury returned a verdict, finding that the City's negligence was not the cause of Chambers' accident. Chambers then made a motion for a new trial, arguing the jury's verdict was not based on substantial evidence. The City opposed the motion, asserting that the jury's verdict was proper. The

3

District Court agreed with Chambers and granted the motion for a new trial.

¶10 The City now appeals both the holding that the City was negligent per se and the order granting Chambers a new trial. Chambers cross appeals the holding that the City's transfer station does not constitute an abnormally dangerous activity as a matter of law. We address the issues in the order presented to the trial court.

## II. STANDARD OF REVIEW

¶11 Because the parties disagree regarding whether the first two questions on appeal are issues of law versus issues of fact, we discuss the standard of review in detail under each issue below.

## III. DISCUSSION

¶12 **1. Did the District Court err in holding that the operation of the transfer station was not an abnormally dangerous activity subject to strict liability?**

¶13 In this case, Chambers made a motion to amend his complaint to add the theory of strict liability. The District Court denied his motion. Normally, we review a trial court's decision regarding a motion to amend a complaint for abuse of discretion. *Lindey's, Inc. v. Professional Consultants, Inc.* (1990), 244 Mont. 238, 242, 797 P.2d 920, 923. However, in its order denying Chambers' motion to amend, the District Court stated:

> Because leave to amend is to be freely given, the Court normally would allow the amendment and would then address the issue of whether the facts support the claim on a motion for summary judgment. However, the Court believes that it has all the facts and law necessary to make that determination at this time.

This statement indicates that despite the City's arguments regarding undue delay and prejudice, the District Court would have allowed Chambers to amend his complaint. Further, this statement indicates the District Court treated Chambers' motion as one for summary judgment when it determined as a matter of law that the "operation of the transfer station does not constitute an

4

abnormally dangerous activity as defined by the Restatement or as applied by any court." Therefore, because the District Court made a determination of law and treated the motion as if it were one for summary judgment, we review the court's determination *de novo*. *Enger v. City of Missoula*, 2001 MT 142, ¶ 10, 306 Mont. 28, ¶ 10, 29 P.3d 514, ¶ 10.

¶14 Chambers asserts that the District Court erred in denying his motion to amend his complaint to add the theory of strict liability because the transfer station meets the majority of factors used to determine whether an activity is abnormally dangerous. He also contends the District Court erred in failing to submit his proposed strict liability instructions to the jury after presentation of the evidence because he asserts that whether or not an activity is abnormally dangerous is a question for the jury.

¶15 The City asserts that the District Court was correct when it denied Chambers' motion to add a claim of strict liability to his complaint because the District Court properly found that the operation of the transfer station was not an abnormally dangerous activity as a matter of law. The City therefore asserts that the trial court did not abuse its discretion because its decision rendered Chambers' motion to amend futile.

¶16 In *Matkovic v. Shell Oil Co.* (1985), 218 Mont. 156, 159, 707 P.2d 2, 3-4, we adopted the Restatement (Second) of Torts §§ 519 & 520 (1976), to determine whether an activity is abnormally dangerous. Section 519 reads:

> (1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.
> (2) This strict liability is limited to the kind of harm, the possibility of which makes
>
> the activity abnormally dangerous.

RESTATEMENT (SECOND) OF TORTS § 519 (1976). Section 520 lists the factors used to determine

5

whether an activity is abnormally dangerous as follows:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
> (b) likelihood that the harm that results from it will be great;
> (c) inability to eliminate the risk by the exercise of reasonable care;
> (d) extent to which the activity is not a matter of common usage;
> (e) inappropriateness of the activity to the place where it is carried on; and
> (f) extent to which its value to the community is outweighed by its dangerous
>
> attributes.

RESTATEMENT (SECOND) OF TORTS § 520 (1976). Since adopting these factors, we have not directly addressed whether any specific activity is abnormally dangerous.

¶17 However, before we discuss whether the District Court was correct on the ultimate issue of whether the City's operation is an abnormally dangerous activity, we must first address whether the question is one of law or fact. In *Matkovic*, we did not address the merits of the case because it was before this Court as a certified question from Montana Federal District Court. However, regarding whether the determination of an activity as abnormally dangerous is a question of law or a question of fact, we stated in dicta that § 519 and § 520 should be given together as instruction, presumably meaning jury instructions. *Matkovic*, 218 Mont. at 160, 707 P.2d at 4. Further, in dicta in *Dvorak v. Matador Serv.* (1986), 223 Mont. 98, 106, 727 P.2d 1306, 1311, this Court again stated that the determination of whether an activity is abnormally dangerous raises a question of fact for the jury. In contrast, in *Beckman v. Butte-Silver Bow County*, 2000 MT 112, ¶ 24, 299 Mont. 389, ¶ 24, 1 P.3d 348, ¶ 24, we addressed the question of whether trenching is an inherently dangerous activity under the similar Restatement §§ 416 and 427 as a question of law.

¶18 In this case, the District Court determined that the activity was not abnormally dangerous as a matter of law. The court decided this question as a matter of law based on a comment to Restatement § 520 cited by the City. This comment reads:

> Function of court. Whether the activity is an abnormally dangerous one is to be

6

determined by the court, upon consideration of all the factors listed in this Section, and the weight given to each that it merits upon the facts in evidence. In this it differs from questions of negligence. Whether the conduct of the defendant has been that of a reasonable man of ordinary prudence or in the alternative has been negligent is ordinarily an issue to be left to the jury. The standard of the hypothetical reasonable man is essentially a jury standard, in which the court interferes only in the clearest cases. A jury is fully competent to decide whether the defendant has properly driven his horse or operated his train or guarded his machinery or repaired his premises, or dug a hole. The imposition of strict liability, on the other hand, involves a characterization of the defendant's activity or enterprise itself, and a decision as to whether he is free to conduct it at all without becoming subject to liability for the harm that ensues even though he has used all reasonable care. This calls for a decision of the court; and it is no part of the province of the jury to decide whether an industrial enterprise upon which the community's prosperity might depend is located in the wrong place or whether such an activity as blasting is to be permitted without liability in the center of a large city.

RESTATEMENT (SECOND) OF TORTS § 520, Comment *l* (1976).  We agree with the reasoning of the Restatement that the determination of whether an activity is abnormally dangerous, thereby subjecting the operator to strict liability, is a question of law for the courts to decide.  Therefore, we take this opportunity to clarify the dicta in *Matkovic* and *Dvorak* and hold that whether an activity is abnormally dangerous is a question of law.  Accordingly, the District Court was correct in addressing the issue as a matter of law.

¶19     We review a trial court's conclusions of law to determine whether its interpretation is correct.  *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.  In this case, we disagree that the District Court properly considered whether the activity qualified as an abnormally dangerous activity.  As mentioned, we have not had opportunity to apply Restatement §§ 519 and 520 since adopting them in *Matkovic*.  However, in *Beckman*, we addressed Restatement §§ 416 and 427, which are used to determine whether employers should be held liable for the torts of subcontractors arising out of work that is inherently dangerous.  *Beckman* reviewed cases which addressed whether or not an activity is inherently dangerous and further held that trenching is an

7

inherently dangerous activity. *Beckman*, ¶¶ 15-25. As part of its holding, *Beckman* overruled cases in which we had previously held activities were not inherently dangerous by virtue of the fact that relatively simple, standard safety measures could be taken to remove the danger. We overruled those cases because we held that the determination of inherent danger should not rest only on the difficulty of the safety measures, but also on the nature of the activity itself. *Beckman*, ¶¶ 17-24 (overruling for example *Kemp v. Big Horn County Elec. Coop.* (1990), 244 Mont. 437, 798 P.2d 999, in which we held that working in a bucket lift was not inherently dangerous because it was only dangerous when the precaution of wearing a safety belt was not taken.)

¶20     In making the holding in *Beckman*, we reaffirmed our discussion in *Ulmen v. Schwieger* (1932), 92 Mont. 331, 12 P.2d 856. In *Ulmen*, a subcontractor's failure to properly warn of the existence of a five-foot deep excavation extending across the full width of the highway by using adequate barriers and detour signs resulted in liability for an inherently dangerous activity. We noted in *Beckman* that even though the erection and maintenance of adequate barriers and detour signs in *Ulmen* were "the very thing that would prevent the work from being intrinsically dangerous," the nature of the excavation activity itself must be assessed to determine whether it qualified as an inherently dangerous activity. *Beckman, ¶* 21 (quoting *Ulmen*, 92 Mont. at 346, 12 P.2d at 859).

¶21     Even though the discussion in *Beckman* and *Ulmen* is not directly binding because it addresses inherently dangerous activities in the context of an employer's strict liability for subcontractors, the case law is instructive here because it nevertheless indicates that the determination of whether an activity is inherently dangerous cannot rest on one factor alone. Further, the comments to the Restatement also indicate that all the § 520 factors must at least be

8

considered to determine whether an activity is abnormally dangerous:

> In determining whether the danger is abnormal, the factors listed in Clauses (a) to (f) of this Section are all to be considered, and are all of importance. Any one of them is not necessarily sufficient of itself in a particular case, and ordinarily several of them will be required for strict liability. On the other hand, it is not necessary that each of them be present, especially if others weigh heavily. Because of the interplay of these various factors, it is not possible to reduce abnormally dangerous activities to any definition.

RESTATEMENT (SECOND) OF TORTS § 520, Comment *f* (1976). Therefore, we hold that while one factor may end up weighing more heavily than the others, a trial court's consideration of whether an activity is abnormally dangerous must at least explicitly consider all the factors listed in Restatement § 520. *See also Dutton v. Rocky Mountain Phosphates* (1968), 151 Mont. 54, 66-67, 438 P.2d 674, 681 (discussing factors to be considered for strict liability previous to adoption of Restatement § 520; courts look to the character of the activity in question, the place and manner in which it is maintained, its relation to its surroundings and customs of the community, and the natural fitness or adaptation of the premises for the purpose).

¶22 In this case, the District Court stated:

> There is nothing in the record to indicate that the operation of a transfer station is an abnormally dangerous activity. Rather, the problem is that there were not any fall protection devices which might have prevented the fall.

In making this determination, there is no specific discussion by the District Court of any of the Restatement § 520 factors listed above. Rather, the court's holding is specifically premised on the safety measures that could have been taken to make the activity safe. This could be considered a discussion of factor (c), i.e. the inability to eliminate the risk by the exercise of reasonable care, but it does not demonstrate the District Court considered all the factors. Further, this holding is in contrast to our holding in *Beckman* because it focuses only on the possible safety measures rather

9

than the pit design and facilities at the transfer station. While the court states that it could not find analogous cases in which a design flaw or the absence of a fall protection device constituted an abnormally dangerous activity, there is still no discussion to indicate the court independently considered the factors in Restatement § 520. Therefore, we hold that the District Court erred in its incomplete determination of whether the activity was abnormally dangerous as a matter of law and we remand to the District Court for its determination of the factors listed in Restatement § 520. In this regard, the court may take up Chambers' motion to amend his complaint in the context of the court's grant of a new trial, which we affirm as discussed below, and the court's decision on whether the City was conducting an abnormally dangerous activity.

¶23     **2. Did the District Court err in holding the City negligent per se regarding   its application of the UBC?**

¶24     Regarding the negligence per se issue, the City's and Chambers' positions are reversed from the previous issue in that the City asserts that its application of the UBC presented an issue of fact for the jury, while Chambers asserts that the District Court was correct in deciding the issue as a matter of law. Again, we must address these arguments first in order to determine the proper standard of review.

¶25     The UBC ordinance under consideration reads:

> Sec. 1712. (a) **Guardrails.** Unenclosed floor and roof openings, open and glazed sides of stairways, landings and ramps, balconies or porches, which are more than 30 inches above grade or floor below . . . shall be protected by a guardrail.
>
> **EXCEPTION**: Guardrails need not be provided at the following locations:
>
> A. On the loading side of loading docks.

UBC, § 1712(a) (1991). The District Court held that the pit did not fit the loading dock exception and therefore, the City's failure to install guardrails was negligence per se.

10

¶26     The City argues that this is a question of fact because conflicting evidence from two experts was presented at trial. The expert who testified on behalf of Chambers gave the opinion that the pit facility did not fit the loading dock exception to the UBC ordinance. The City's expert, the chief building officer charged with interpreting and applying the UBC and the one who actually reviewed the design of the transfer station, testified he determined that the pit facility met the loading dock exception to the UBC. Thus, the City contends that interpretation of the UBC ordinance was a finding of fact that the trial court improperly removed from the province of the jury because the court made credibility determinations and weighed the evidence. Consequently, the City argues that it was denied its right to a jury trial.

¶27     In addition, the City supports its argument that violation of a UBC ordinance is a question of fact by pointing to Montana Pattern Jury Instruction (MPI) No. 2.14. This instruction reads:

> If you find that [any party to this suit] [the defendant] violated any of the following laws, then [that party] [the defendant] is negligent. You should then determine whether that negligence was a cause of the plaintiff's injury. [Quote or paraphrase the statute]

MPI No. 2.14. The City argues that this instruction would not be included as a pattern instruction if violation of a statute were a matter of law.

¶28     In contrast, Chambers asserts that interpretation of a UBC provision, like interpretation of a statute is a question of law.

¶29     We agree with Chambers. We have held that the interpretation of an ordinance is "practically the same" as interpretation of a statute. *Schanz v. City of Billings* (1979), 182 Mont. 328, 332, 597 P.2d 67, 69. Interpretation and construction of a statute is a matter of law. *Clover Leaf Dairy v. State* (1997), 285 Mont. 380, 389, 948 P.2d 1164, 1169; § 26-1-201, MCA. Further, we have previously stated that whether negligence per se exists is an issue of law. *Schwabe ex rel.*

11

*Estate of Schwabe v. Custer's Inn Assocs.,* 2000 MT 325, ¶ 25, 303 Mont. 15, ¶ 25, 15 P.3d 903, ¶ 25.

¶30    We have also specifically addressed application of the UBC as a matter of law in previous cases. For example, in *Herbst v. Miller* (1992), 252 Mont. 503, 507, 830 P.2d 1268, 1271, we held the plaintiff was entitled to a negligence per se holding because the city UBC ordinance requiring handrails applied to the defendant landlord's building as a matter of law and it was undisputed the landlord failed to install handrails. In *Pierce v. ALSC Architects, P.S.* (1995), 270 Mont. 97, 106, 890 P.2d 1254, 1259, we held an architect negligent per se because it was undisputed that he failed to prevent access to an unsafe area as required by our interpretation of the terms of the UBC. Finally, in *Knutson v. Barbour* (1994), 266 Mont. 170, 173-76, 879 P.2d 696, 698-700, we held the UBC did not apply to the accident area because the area did not fit the UBC criteria as a matter of law. *See also Massman v. City of Helena* (1989), 237 Mont. 234, 238-40, 773 P.2d 1206, 1209-10 (city not negligent per se because it was not required to ensure fire extinguishing system existed for temporary permit under UBC as a matter of law).

¶31    Together, these cases require a conclusion that interpretation of a UBC ordinance is a matter of law, the violation of which may constitute negligence per se if all the elements of negligence per se are met. *See VanLuchene v. State* (1990), 244 Mont. 397, 401, 797 P.2d 932, 935 (setting out elements of plaintiff's burden to prove negligence per se: defendant violated a particular statute that was intended to regulate members of defendant's class; plaintiff is a member of the class statute was enacted to protect with an injury of the sort statute was enacted to prevent).

¶32    In this case, it is undisputed that the City was subject to the UBC ordinance at issue and undisputed that there were no guardrails installed along the transfer station pit. Further, the District

12

Court's statement that the obvious purpose of the UBC ordinance was to prevent falls indicates that it was undisputed that Chambers was a member of the class of persons with an injury of the sort the ordinance was enacted to prevent. Given these undisputed facts, Chambers met the elements of negligence per se. *See VanLuchene*, 244 Mont. at 401, 797 P.2d at 935. The only determination to be made was whether the loading dock exception properly applied to the transfer station pit under UBC § 1712(a). Therefore, any factual decision to be made other than causation or damages was already removed from the jury because it was undisputed by the parties.

¶33    Further, MPI 2.14 indicates that it is up to a jury to decide whether a statute has been violated. The determination of whether a party actually committed a proscribed act is distinct from the determination of what activity a statute actually proscribes in the first place. For example, a plaintiff might assert a defendant is negligent per se for running a red light, thereby violating a statute and causing an accident injuring the plaintiff. However, the defendant may argue as an issue of fact that he did not actually run the light. This determination would be properly left to the jury with MPI 2.14 given as instruction. *Cf. Davis v. Church of Jesus Christ of Latter Day Saints* (1990), 244 Mont. 61, 67, 796 P.2d 181, 184 (conflicting testimony submitted on whether church's ramp was actually in violation of the UBC) *overruled on other grounds by Richardson v. Corvallis Pub. Sch. Dist. No. 1* (1997), 286 Mont. 309, 950 P.2d 748. In this case, MPI 2.14 should not have been given to the jury as instruction once the court made the negligence per se determination, because the there were no undisputed issues regarding violation of the statute.

¶34    As stated, the only determination remaining to be made was whether or not the loading dock exception properly applied to the pit. This was a question of statutory interpretation for the court to decide. We disagree with the City's position that conflicting evidence or differing expert opinions

13

inevitably creates an issue of fact that must go to the jury. If that were the case, statutory interpretation would always become an issue of fact. Therefore, we hold that the District Court was correct in deciding the negligence per se issue as a matter of law, despite the fact that the court did not make this determination until the close of evidence and despite the fact that the District Court considered conflicting evidence from experts who disagreed regarding the appropriate application of the exception to the UBC ordinance. *See Pierce*, 270 Mont. at 104-05, 890 P.2d at 1258 (expert testimony submitted on application of the UBC during trial); *cf. Knutson*, 266 Mont. at 173, 879 P.2d at 698 (no expert testimony submitted). While issues of law are normally decided on summary judgment preceding the trial presentation of evidence, a court can properly dispose of issues of law at anytime during the proceedings. Again, our review of the District Court's determination of law is *de novo*. *Carbon County*, 271 Mont. at 469, 898 P.2d at 686.

¶35    While the City presents no argument on appeal regarding the interpretation of UBC § 1712(a), other than noting the testimony of the City building official as discussed above, we conclude that the District Court correctly interpreted the ordinance and held the City negligent per se in this case.

¶36    The court stated that because "the loading side of loading docks" was not defined, it had to look to dictionary definitions and common usage. The Court further stated that the dictionary definitions it reviewed all indicated that while loading docks were not specifically defined, docks were defined as platforms used to load and unload from motor carrier-type vehicles and that none of these definitions indicated use of a pit. Further, the court noted that common usage of loading docks as testified to by the parties fit the dictionary definitions. Finally, the court noted that the plans for the facility showed a pit, that there was no indication on the plans that the pit was considered to be a

14

loading dock and that the City's building official did not indicate on the plans that the loading dock exception applied to the pit. Consequently, the court concluded that the City was negligent per se.

¶37　We agree that the plain language of UBC § 1712(a) and its loading dock exception do not include a pit design such as that used at the transfer station for the reasons cited by the District Court. When a UBC term is not defined, ordinary dictionary definitions are to be used. *Knutson*, 266 Mont. at 174, 879 P.2d at 698. While "loading dock" is not listed in the dictionary, both the noun and verb forms of the word "dock" indicate that loading on and off of a carrier-type vehicle by joining two surfaces together is intended. *See* WEBSTER'S NEW AMERICAN DICTIONARY 153 (1995) (dock *n*: 2. . . . platform for loading or unloading materials; dock *vb*: 1. to bring or come into dock). Further, all our cases using the term "loading dock" refer to platforms that vehicles can pull up to for loading. *See e.g. Salvail v. Great N. Ry.* (1970)*,* 156 Mont. 12, 16, 473 P.2d 549, 552; *Carlson v. Cain* (1983), 204 Mont. 311, 324, 664 P.2d 913, 919.

¶38　Under the common usage of "loading dock," the activity of people using the dock actually ends up being on the somewhat level surface that is created when a motor-carrier type vehicle is pulled up to and abutting the dock. To equate this activity to one in which people must move material over the edge of a drop-off would render the loading dock exception nearly meaningless. Therefore, the District Court correctly determined that the loading dock exception did not apply, that the City violated UBC § 1712(a), and that Chambers was a member of the class with the type of injury the ordinance was designed to prevent. Therefore, the court properly determined the City was negligent per se.

¶39　**3. Did the District Court abuse its discretion in granting Chambers a new trial on the issue of causation?**

¶40　Regarding the final issue on appeal, the parties agree that the standard of review is whether

the trial court abused its discretion. *Wilhelm v. City of Great Falls* (1984), 211 Mont. 430, 433, 685 P.2d 350, 351; *Brockie v. Omo Constr.* (1994), 268 Mont. 519, 525, 887 P.2d 167, 170 *overruled on other grounds by Porter v. Galarneau* (1996), 275 Mont. 174, 911 P.2d 1143.

¶41    In this instance, the City asserts that the District Court abused its discretion by granting Chambers a new trial on the issue of causation because it asserts there was substantial evidence upon which the jury based its verdict.  The City argues that the jury found no causation because Chambers supposedly did not present direct testimony or expert testimony on whether the lack of a guardrail was a substantial factor in his accident.  The City argues the jury properly interpreted the facts of the accident and concluded that Chambers pulled on the screen door with such force and fell backward with such force, that a guardrail would not have stopped his fall.  Further, the City argues it was within the province of the jury to judge Chambers' credibility and decide that the accident was due to his own contributory negligence.  Finally, the City asserts that the District Court failed to view the evidence in the light most favorable to the City as the prevailing party and consequently, the District Court's decision to grant a new trial denied the City its right to a jury trial.

¶42    Chambers argues the court properly exercised its discretion.  Chambers asserts that the evidence he presented on the issue of causation, simply his own and Therriault's uncontradicted testimony regarding how the accident happened, was direct evidence of causation.  Further, Chambers argues that the City did not present direct evidence or testimony on the issue of causation to refute the witness testimony.  Chambers also asserts that expert testimony was not necessary on the issue of causation.  Finally, Chambers notes that the negligence per se ruling established the City's negligence.

¶43    Regarding the grant of a new trial, the District Court stated:

> Here, the Court finds that the evidence is insufficient to justify the verdict. The evidence is clear that the accident happened when Chambers tripped on the concrete curb and fell into the pit. The City was required by the UBC to provide a 42-inch-high guard rail [sic] to serve as a fall protection device, but the City failed to do so.
>
> In Instruction No. 13, the jury was told that "[t]he defendant's conduct is a cause of

16

the plaintiff's injury if it is a substantial factor in bringing it about." Clearly, the lack of a fall-protection device was a substantial factor in the accident.

Further, the District Court noted there was no requirement for expert testimony on the issue of causation in a case such as this. Therefore, the District Court based its decision to grant a new trial on the grounds that there was insufficient evidence to support the jury's verdict because it stated that Chambers met his burden "to show that the City's negligence was a substantial factor in the accident."

¶44    While we agree with the City that jury verdicts are to be treated with deference, our standard of review of motions to grant a new trial indicates that we also give deference to a trial court's decision on whether there was sufficient evidence to support the jury's verdict. In *Wilhelm*, 211 Mont. at 433, 685 P.2d at 351, we upheld the trial court's grant of a new trial to the plaintiffs based on insufficiency of the evidence where the jury found that the defendant's failure to properly manage its garbage dump was the cause of the plaintiffs' damages, but at the same time found that the plaintiffs were ninety percent negligent for living a mile and a half from the dump. We agreed with the trial court that the jury findings were based on insufficient evidence. *Cf. Brockie*, 268 Mont. at 525, 887 P.2d at 170 (trial court abused its discretion by failing to grant a new trial where the jury found no damages even though statute entitled the plaintiff to certain undisputed damages). *See also* § 25-11-102(6), MCA.

¶45    Here, the court held that the jury's verdict was based on insufficient evidence because the City was negligent per se and Chambers fell over an edge that was required to have a fall protection device. We agree with the District Court that the jury's verdict was based on insufficient evidence and we hold that the court did not abuse its discretion in granting a new trial.

¶46     Finally, the dissent demands an explanation for the majority's decision to remand this cause to the District Court. The reason is obvious. In this cause the trial court erred by failing to consider various factors in deciding whether the City's operation of the transfer site was abnormally dangerous. We are remanding to allow the District Court to consider and apply those criteria. While the decision itself is one of law, the trial court is in the best position to weigh the various factors in the light of the existing record and whatever new evidence it wishes to consider and to decide what the law is. We are not pre-determining how the judge should rule. The dissent would simply impose his own weighing of the factors on the trial court. We believe that it is more appropriate to let the District Judge do his job, and if his decision is in error, then we will do ours.

## IV. CONCLUSION

¶47     Because the District Court failed to properly consider whether the transfer station constituted an abnormally dangerous activity when it failed to consider the Restatement § 520 factors, we reverse on this issue. Because the District Court correctly determined that the City was negligent per se when it violated the UBC ordinance regarding the loading dock exception for guardrails, we affirm. Further, the District Court did not abuse its discretion in granting Chambers a new trial based on its determination that the jury's verdict was not based on substantial evidence.

¶48     Affirmed in part and reversed in part and remanded for further proceedings consistent with this Opinion.

/S/ JIM REGNIER

We Concur:

18

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JIM REGNIER

Justice Terry N. Trieweiler concurring and dissenting.

¶49 I concur with the majority's conclusion that the Uniform Building Code was correctly applied by the District Court as a matter of law and that the City was, therefore, negligent per se. I also concur that the District Court did not abuse its discretion when it granted the Plaintiff's motion for a new trial.

¶50 I concur with the majority's conclusion that the District Court erred when it decided as a matter of law that the operation of the City's transfer station was not an abnormally dangerous activity. However, I dissent from the majority's refusal to apply the law correctly.

¶51 The majority correctly notes in ¶ 7 that the District Court decided the issue of whether the City's activity was abnormally dangerous as a matter of law. As pointed out in ¶ 11 of the majority's Opinion, both parties agree that the issue presented is a question of law. The majority concludes in ¶ 18, and I agree, that whether an activity is abnormally dangerous is a question of law for the Court to decide. Finally, the majority notes in ¶ 13 that we decide issues of law de novo. The majority concludes that the issue of law was incorrectly decided and then for some inexplicable reason, remands to the District Court to decide the issue all over again without any guidance on what the correct conclusion should be.

¶52 If the question of whether the City's activity was abnormally dangerous is a question of law; and, if the District Court was incorrect when it decided as a matter of law that the activity was not abnormally dangerous; then, as a matter of law, the activity must have been abnormally dangerous. As a matter of law, it has to be one or the other. The relevant facts are not going to change between now and the District Court's decision. All the evidence has been presented.

¶53 A perfect example of the inadequacy of the majority Opinion is *Beckman v. Butte-Silver Bow County*, 2000 MT 112, 299 Mont. 389, 1 P.3d 348, on which the majority relies by way of analogy

20

in ¶ 19 of its Opinion. In *Beckman*, we were asked to decide whether trenching was an inherently dangerous activity within the meaning of §§ 416 and 427 of the Restatement (Second) of Torts. We did not discuss the applicable law and then remand to the district court for the purpose of deciding it. We concluded as a matter of law that the activity in question was inherently dangerous. The only difference here is we are being asked to decide whether the transfer station is "abnormally dangerous." We correctly decide the applicable factors. We then conclude that the answer presents an issue of law. We then refuse to decide the issue of law and remand to the District Court to do our job.

¶54    The majority's avoidance reflex is becoming a pattern (*See Molina v. Panco Construction*, 2002 MT 136, ___ Mont. ___, ___ P.3d ___) and presents serious practical problems for the District Court and both parties. This case was commenced nearly four years ago on July 17, 1998. The jury's verdict was returned on May 19, 2000, and the District Court's order granting a new trial was entered on July 25, 2000. The notices of appeal and cross-appeal were filed on August 23 and 31, 2001, respectively. It will be nearly a year later when our Opinion is issued.

¶55    After all that time, the District Court is simply being told to redecide one of the principal legal issues raised on appeal with no indication of how that legal issue should be decided. Therefore, regardless of the District Court's decision, either party is presumably entitled to appeal that decision a second time. After several years, two decisions in the District Court, and one appeal to this Court, the parties will be no closer toward resolution than they were when the District Court originally decided as a matter of law that the City's activity was not abnormally dangerous.

¶56    How does this procedural nightmare serve anyone's interests? How does it fulfill this Court's obligation to decide the issues of law that are brought to it? If someone in the majority has an explanation, maybe they will provide it. Until then, I dissent from the majority's refusal to do our

21

job.

/S/ TERRY N. TRIEWEILER