DA 06-0315

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 258

DANIEL J. FABICH,

        Plaintiff and Appellant,

    v.

PPL MONTANA, LLC a Delaware Company
and JOHN DOES I through 10,

        Defendant and Appellees.

APPEAL FROM:    District Court of the Third Judicial District,
                    In and For the County of Anaconda-Deer Lodge, Cause No. DV-03-92
                    Honorable Ted L. Mizner, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Patrick T. Gallagher; Skakles & Gallagher, Anaconda, Montana

                Robert G. McCarthy; McCarthy Law Firm, Butte, Montana

        For Appellees:

                Robert L. Sterup; Holland & Hart, Billings, Montana

                    Submitted on Briefs:  January 31, 2007

                              Decided:  October 9, 2007

Filed:

                                _____
                                       Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Daniel Fabich filed this action seeking damages for injuries he suffered when he fell from scaffolding. The Third Judicial District Court, Anaconda-Deer Lodge County, granted summary judgment for PPL Montana, LLC (PPL). Fabich appeals. We affirm.

¶2 We restate the issues as follows:

¶3 1. Was summary judgment premature because discovery had not been completed?

¶4 2. Did the District Court correctly interpret the Montana Scaffolding Act?

¶5 3. Did the District Court correctly apply Montana law concerning liability for negligence?

¶6 4. Do genuine issues of material fact preclude summary judgment?

BACKGROUND

¶7 Daniel Fabich was employed as a boilermaker by Power Maintenance Resources, Inc. (PMRI), which contracted to perform maintenance work at PPL's Colstrip, Montana, power plant. On June 14, 2000, Fabich was working inside a scrubber vessel which he and other members of a PMRI crew were relining with steel plates. In performing the work, PMRI's crew was using scaffolding erected by other PMRI employees. While Fabich was climbing the scaffolding inside the scrubber vessel, his foot and hand slipped off the rungs of the scaffolding. He fell approximately 25 feet to the floor. Fabich fractured his ankle, back and wrist. After the accident, PMRI issued Fabich a safety violation citation for climbing with materials in his hands when buckets and ropes were available—and should have been used— for hauling materials up the scaffolding.

¶8    In June of 2003, Fabich filed this negligence suit against PPL and John Does 1 through 10—unknown owners, builders, contractors or subcontractors who allegedly erected, provided, installed or otherwise were responsible for the scaffolding or its condition. In October of 2005, PPL moved for summary judgment pursuant to M. R. Civ. P. 56. The following March, after briefing and oral argument, the District Court granted PPL's motion for summary judgment. Fabich appeals.

## STANDARD OF REVIEW

¶9    Summary judgment is proper under M. R. Civ. P. 56(c), if "the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." We review a summary judgment ruling *de novo*. *Cole v. Valley Ice Garden, L.L.C.*, 2005 MT 115, ¶ 4, 327 Mont. 99, ¶ 4, 113 P.3d 275, ¶ 4.

## ISSUE 1

¶10    **Was summary judgment premature because discovery had not been completed?**

¶11    Fabich contends summary judgment was premature because PPL failed to identify its safety people in its discovery responses. He contends the District Court erred in "not allowing" him to depose PPL's "undisclosed safety persons" before granting summary judgment. The record does not support Fabich's contentions.

¶12    Fabich filed this action in June of 2003. In an August of 2005 deposition, a PMRI supervisor stated PPL did not routinely check safety, but that a PMRI employee checked the

3

scaffolding on a daily basis. PPL filed its motion for summary judgment on October 5, 2005.

¶13    Fabich did not make his first written discovery requests of PPL until October 27, 2005—over two years and four months after he filed this action, nine months after the District Court issued its scheduling order including a discovery deadline of December 30, 2005, and more than three weeks after PPL moved for summary judgment. In the discovery requests, Fabich asked for the names of persons with knowledge of the operating condition and safety features of the scaffolding involved in his accident, the names of persons who inspected the scaffolding, the name and address of the owner of the scaffolding, a description of the scaffolding, and whether PPL had conducted an investigation of the circumstances of the accident. The gist of PPL's answers—provided on December 16, 2005—was that PPL was unaware of any PPL safety person who had inspected the scaffolding or work site and that PMRI, not PPL, was responsible for supplying, erecting, inspecting, maintaining, moving and cleaning the scaffolding.

¶14    On December 29, 2005, Fabich moved to extend the discovery deadline of December 30, 2005, on grounds that PPL had not provided names of its safety employees, whom Fabich wanted to depose. The court ordered all deadlines and further briefing suspended pending its ruling on PPL's motion for summary judgment. After a hearing in January of 2006, the court granted summary judgment to PPL.

¶15    Fabich has not established an entitlement to additional discovery. He moved to extend the discovery deadline, but not the scheduled summary judgment hearing. More importantly, Fabich did not meet the requirements for continuing a summary judgment proceeding on

4

grounds that further discovery was necessary. M. R. Civ. P. 56(f) provides:

> Should it appear from the affidavits of a party opposing [a motion for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fabich did not file a Rule 56(f) affidavit at any time.

¶16    On this record, we hold summary judgment was not premature.

ISSUE 2

¶17    **Did the District Court correctly interpret the Montana Scaffolding Act?**

¶18    The District Court concluded that the Montana Scaffolding Act (Act), by its terms, did not apply to PPL. Fabich asserts error.

¶19    The Act provides:

> [A] contractor, subcontractor, or builder who uses or constructs a scaffold on a construction site is liable for damages sustained by any person who uses the scaffold [subject to comparative negligence principles and excluding a fellow employee or an immediate employer] when the damages are caused by negligence of the contractor, subcontractor, or builder in the use or construction of the scaffold.

Section 50-77-101(3), MCA. Fabich appears to contend that, as the "builder" of the lining in the scrubber vessel, PPL is liable for his damages. This contention merits little discussion.

¶20    The record before us is clear that PPL neither used nor constructed the scaffolding at issue. Fabich's PMRI supervisor stated via affidavit that PMRI carpenter crews erected and maintained the scaffolding and moved it as required. On this record, we conclude PPL is not a "contractor, subcontractor, or builder" which "use[d] or construct[ed] the scaffold."

5

¶21　We hold the District Court correctly interpreted the Act.

ISSUE 3

¶22　**Did the District Court correctly apply Montana law concerning liability for negligence?**

¶23　Negligence generally consists of the breach of a duty which causes damages. If a plaintiff fails to offer proof of any one of the elements of negligence, summary judgment in favor of the defendant is proper. *Abraham v. Nelson*, 2002 MT 94, ¶ 11, 309 Mont. 366, ¶ 11, 46 P.3d 628, ¶ 11 (citation omitted). The existence of a legal duty and the scope of any duty are questions of law. *Dukes v. City of Missoula*, 2005 MT 196, ¶ 11, 328 Mont. 155, ¶ 11, 119 P.3d 61, ¶ 11 (citation omitted).

¶24　As a general rule, an owner, employer or general contractor (hereinafter, "owner") does not have a duty to prevent injuries to an independent contractor's employees. *Cunnington v. Gaub*, 2007 MT 12, ¶ 13, 335 Mont. 296, ¶ 13, 153 P.3d 1, ¶ 13 (citations omitted). Fabich contends PPL had a duty to him under three recognized exceptions to that general rule: PPL negligently exercised retained control, the activity was inherently dangerous, and PPL had a nondelegable duty. Consequently, according to Fabich, the District Court erred in rejecting these theories of liability.

¶25　Negligence in exercising retained control. If an owner retains control over an independent contractor's employees and negligently exercises that control, the owner has a duty based on a theory of retained control. *See Beckman v. Butte-Silver Bow County*, 2000 MT 112, ¶¶ 35-37, 299 Mont. 389, ¶¶ 35-37, 1 P.3d 348, ¶¶ 35-37. The standard is whether the owner retained authority to direct the manner in which the work was performed and knew

6

or should have known that the independent contractor was performing work in an unreasonably dangerous manner. *Beckman*, ¶ 33.

¶26 In *Beckman*, Butte-Silver Bow County had retained an independent contractor to extend city water lines. Beckman, an employee of the independent contractor, was injured when a trench in which he was working collapsed. Beckman sued Butte-Silver Bow for negligence. The district court subsequently entered summary judgment for the county, and Beckman appealed. *Beckman*, ¶ 10.

¶27 Contract documents between Butte-Silver Bow and the independent contractor in *Beckman* provided that "materials and methods of construction . . . shall conform to the requirements of Butte-Silver Bow," and Butte-Silver Bow retained responsibility to furnish a construction expert "for monitoring all construction work." In addition, it was undisputed that Butte-Silver Bow employees were present at the job site. We determined that the evidence, when viewed in a light most favorable to the plaintiff, revealed genuine issues of material fact regarding whether Butte-Silver Bow retained the means with which to both discover and cure any unreasonably dangerous conditions created by the independent contractor's work and, therefore, regarding whether Butte-Silver Bow negligently exercised control it retained over the independent contractor's work. Under such circumstances, we concluded summary judgment for Butte-Silver Bow was precluded. *Beckman*, ¶¶ 38-40.

¶28 Fabich analogizes this case to *Beckman*. He posits that PPL's "safety man" was present each day of the job and was at the safety meetings once a week, PPL was in a rush to complete the job of relining the scrubber, PPL had the power to monitor safety and stop the

7

job or make changes for safety reasons, and PPL issued safety compliance memos in the form of a "clean-shaven" policy and a footwear safety-toe policy which applied to PMRI workers as well as its own workers. To the extent Fabich's statements are supported by the record, they fail to bring this case within the *Beckman* exception to the general rule.

¶29 The agreement between PPL and PMRI concerning safety responsibilities differs significantly from that in *Beckman*. Unlike in *Beckman*, the independent contractor—here, PMRI—had primary responsibility for safety under the contract. The safety-related contract provisions between PPL and PMRI are found in Section 27, "Safety and Health," of their contract, as follows:

> a. [PMRI] shall take all reasonable precautions in the performance of the work under this contract to protect the safety and health of employees and members of the public and shall comply with all applicable safety and health laws and regulations.
> b. If at any time [PMRI's] methods, material, or equipment are determined by [PPL's] Representative to be unsafe or inadequate to secure the safety of employees or the public, [PPL's] Representative may order [PMRI] to increase its safety or adequacy or to stop all or any part of the work. The failure of [PPL's] Representative to so order [PMRI] shall not relieve [PMRI] of its health and safety obligations under the contract.

In addition, the contract between PPL and PMRI provided that PPL representatives could give orders to PMRI workers only in the event of emergency and, even then, only in the absence of PMRI's "General Superintendent (or equivalent)." Furthermore, the deposition testimony of record here totally refutes Fabich's position. According to the PMRI supervisor, PMRI was contractually responsible for checking the safety of the scaffolding every day and the PMRI safety manager was in charge of checking the area each day before

8

work began.  Fabich's own deposition testimony was that he received no instructions or direction from PPL staff and that, under union rules, no PPL representative was allowed to tell him what to do.

¶30     Fabich also cites to *Shannon v. Howard S. Wright Const. Co.*, 181 Mont. 269, 593 P.2d 438 (1979), for the idea that an owner may be liable when it retains some or even shared authority over the property or working circumstances of the job site.  In *Shannon*, the plaintiff plumber was injured when he fell from a ladder at a construction site.  The owner had the authority to order temporary stairs and handrails built at the site, but decided not to do so, requiring the contractor's employees to access the site either by climbing a ladder and then crawling through a window casing or by walking across a plank over a deep ditch.  We affirmed a jury verdict for the plaintiff, holding that, under these circumstances—in which the authority to create safe work conditions rested entirely with the defendants—the jury could properly find the defendants liable for injury to an independent contractor's employee.  *Shannon*, 181 Mont at 281, 593 P.2d at 445.  Given the circumstances and record discussed above, *Shannon* is inapposite here.

¶31     We hold the District Court did not err in rejecting Fabich's "negligence in exercising retained control" theory of liability because PPL did not retain control over the working circumstances.

¶32     <u>Inherently dangerous activity</u>.  Owners may be liable for the torts of independent contractors arising out of work that is inherently dangerous or hazardous.  *See Beckman*, ¶ 15 (citation omitted).  Whether work is inherently dangerous is a question of law.  *Beckman*, ¶¶

24-25.

¶33 Fabich's claim under this theory is that the unreasonable risk to him came from slippery grit on the scaffolding he was climbing. According to Fabich, the grit had not been cleaned away after the scrubber was sandblasted and before his crew began working in the scrubber. He maintains that climbing scaffolding covered with slippery grit from sandblasting is an inherently dangerous activity that PPL could have eliminated by a work stoppage. This claim verges on the totally specious.

¶34 Fabich relies on facts set forth in the RESTATEMENT (SECOND) OF TORTS, § 520 (1976), to determine whether an activity is abnormally dangerous. He points out that, in *Chambers v. City of Helena*, 2002 MT 142, ¶ 16, 310 Mont. 241, ¶ 16, 49 P.3d 587, ¶ 16, *overruled on other grounds, Giambra v. Kelsey*, 2007 MT 158, 338 Mont. 19, 162 P.3d 134, we adopted these factors.

¶35 The factors we adopted in *Chambers* apply to claims of strict liability in tort for abnormally dangerous activities. *See Chambers*, ¶ 13. Fabich has raised no such claim here.

¶36 In any event, PPL would be liable only for PMRI's tort arising from unreasonable risks caused by engaging in an inherently dangerous activity—hazards not ordinarily encountered in the community, which call for particular precautions. *Beckman*, ¶ 22. The special precautions in *Beckman*, for example, would have involved shoring, bracing, or using trench boxes to keep the trench in which people were working from caving in on them. *Beckman*, ¶ 25. *Beckman* references a contrasting example from the RESTATEMENT (SECOND) OF TORTS, § 416 cmt. d (1976), that an owner would not be liable for torts caused

10

by an independent contractor's employee's speeding while driving a truck hauling giant logs. The obvious reason, of course, is that speeding is not an unreasonable risk particular to transporting giant logs. *See Beckman*, ¶ 22.

¶37    Similarly, slippery material underfoot, such as the grit described by Fabich, is a hazard which ordinarily may be encountered at worksites and which does not call for particular precautions. Nothing of record indicates removing any such grit would have required anything other than standard cleaning measures.

¶38    We hold that the District Court was correct that the record does not establish an inherently dangerous activity which could create liability on the part of PPL.

¶39    <u>Nondelegable duty</u>. Liability may be based on a nondelegable duty of the owner only when a contractual provision establishes that the owner has assumed responsibility for initiating, maintaining, and supervising safety precautions. *Beckman*, ¶¶ 34-35.

¶40    Fabich relies on Section 27 b. of the contract in arguing that PPL agreed to supervise job safety. As indicated in the text of Section 27 of the contract set forth in ¶ 29 above, PPL's responsibility for safety under Section 27 b. was secondary and totally discretionary. We hold that Fabich did not establish a nondelegable duty on the part of PPL.

¶41    We hold the District Court properly applied Montana law concerning liability for negligence.

## ISSUE 4

¶42    **Do genuine issues of material fact preclude summary judgment?**

¶43    Fabich claims several facts are in dispute on the record before us: 1) a co-worker's

11

affidavit that Fabich carried two boxes of welding rods up the scaffold conflicts with Fabich's deposition testimony that he only carried one box; and 2) a PMRI supervisor's affidavit that ropes and buckets were available in which to place the welding rods for lifting up the scaffolding conflicts with Fabich's deposition testimony that there were no ropes and buckets in the area where he climbed and fell. On this basis, he urges the District Court erred in granting summary judgment for PPL.

¶44 Fabich is correct that issues of fact exist in the record before us. However, a factual dispute must be material to preclude summary judgment. *See Roe v. Kornder-Owen*, 282 Mont. 287, 292, 937 P.2d 39, 43 (1997). *Roe* was a negligence action which arose out of an automobile collision. The party opposing summary judgment contended there was an issue of material fact as to whether the party moving for summary judgment had been speeding at the time of the accident. We determined that issue would be material only if there were evidence that the speeding contributed to the parties' collision. Absent such evidence, the factual issue was not material and did not preclude summary judgment. *Roe*, 282 Mont. at 295, 937 P.2d at 44.

¶45 Here, we conclude that factual disputes over whether Fabich was carrying one or two boxes of welding rods and whether ropes and buckets were available to carry the welding rods are not issues of material fact because they do not affect PPL's liability. As discussed above under Issues 2 and 3, Fabich has not established a basis upon which PPL could be legally liable to him. Therefore, Fabich's claims must fail, as a matter of law.

¶46 Affirmed.

12

/S/ KARLA M. GRAY

We concur:

/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ BRIAN MORRIS